# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SUK JOON RYU, a/k/a James S. Ryu

                              Plaintiff,

           v.

BANK OF HOPE,

                          Defendant.

Civil Action No.: 2:19-18998 (KM)(JBC)

*Document Electronically Filed*



---

## BRIEF IN SUPPORT OF DEFENDANT BANK OF HOPE'S MOTION TO DISMISS

---

**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500 (phone)
(212) 878-8600 (fax)

150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540 (phone)
(609) 228-5318 (fax)

Attorneys for Defendant
Bank of Hope

Of Counsel and on the Brief:
Eric W. Moran, Esquire
Theodora McCormick, Esquire

On the Brief:
Lauren B. Cooper, Esquire

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION ........................................................................1

STATEMENT OF FACTS ............................................................5

     A.    Background of Bank of Hope and the Embezzlement ...............5

     B.    Karen Chon Stated that Ryu Was Involved in the Embezzlement ...............................................................5

     C.    The Bank's March 2014 Report Showed Ryu's Financial Motive ....................................................................7

     D.    Based on Reasonable Grounds, the Bank filed the March 2014 Embezzlement Action .......................................9

     E.    Chon's June 2016 and March 2018 Depositions Further Implicated Ryu ........................................................10

     F.    The FBI's Reports Further Inculpated Ryu .............................12

     G.    Judge Linares Denied Ryu's Summary Judgment Motion .......13

     H.    The Bank Dismissed the Embezzlement Action for Economic Reasons .................................................14

ARGUMENT ...........................................................................16

  I.    RYU HAS FAILED TO STATE A CLAIM FOR MALICIOUS USE OF PROCESS ....................................................16

     A.    The Complaint Fails to Establish a Lack of Reasonable or Probable Cause .......................................................19

         1.    Ryu Fails to Plausibly Allege the Bank Lacked Probable Cause to Bring the Embezzlement Action. ......20

i

2.	The Law Does Not Require Resolution of All Conceivable Issues and Questions of Credibility before Filing a Civil Action..............................................21

3.	The Bank's Grounds for Maintaining the Embezzlement Action Increased after the Embezzlement Action Was Filed. ..................................27

B.	The Embezzlement Action Did Not Terminate in Ryu's Favor. ......................................................................................29

C.	Ryu Has Failed To Plead A "Special Grievance." ..................34

CONCLUSION ..........................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Lagano*,
 172 N.J. Super. 468, 412 A.2d 1054 (Law Div. 1979)......................................37

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)..........................................................................................28

*Angelastro v. Prudential–Bache Securities, Inc.*,
 764 F.2d 939 (3d Cir. 1985) ............................................................................16

*Angstadt v. Midd-West Sch. Dist.*,
 377 F.3d 338 (3d Cir. 2004) ..............................................................................7

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................16

*Brien v. Lomazow*,
 227 N.J. Super. 288 (App. Div. 1988).....................................................4, 18, 35

*In re Burlington Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) ....................................................................16, 17

*California Pub. Employee Ret. Sys. v. The Chubb Corp.*,
 394 F.3d 126 (3d Cir. 2004) ............................................................................16

*Component Hardware Grp, Inc. v. Trine Rolled Molding Corp.*,
 No. 05-891, 2007 WL 2177667 (D.N.J. July 27, 2007)....................................36

*Cult Awareness Network v. Church of Scientology Int'l*,
 685 N.E.2d 1347 (Ill. 1997)..............................................................................31

*Dix v. Total Petrochemicals USA, Inc.*,
 No. CIV. 10-3196, 2011 WL 2474215 (D.N.J. June 20, 2011) ........................17

*Fielder Agency v. Eldan Const. Corp.*,
 152 N.J. Super. 344 (Law Div. 1977).....................................................35, 36, 39

*Fidelity Eatontown, LLC v. Excellency Enter., LLC,*
    Civ. A. No. 3:16-cv-3899-BRM-LHG, 2017 WL 2691417 (D.N.J.
    Jun. 22, 2017)...................................................................................................20

*Frey v. Stoneman,*
    722 P.2d 274 (Ariz. 1986) ...............................................................................31

*Garcia v. New Jersey State Prison,*
    No. CIV. 05-3159 AET, 2007 WL 2669332 (D.N.J. Sept. 6, 2007).................17

*Giri v. Rutgers Casualty Insurance Co.,*
    273 N.J. Super. 340 (App. Div. 1994)..............................................................37

*Hassoun v. Cimmino,*
    126 F. Supp. 2d 353 (D.N.J. 2000)...................................................................38

*Hewitt v, Rice,*
    154 P.3d 408 (Colo. 2007)................................................................................32

*Himmelfarb v. Allain,*
    380 S.W.3d 35 (Tenn. 2012) ............................................................................32

*Kossler v. Crisanti,*
    564 F.3d 181 (3d Cir. 2009) .............................................................................33

*KT Bolt Mfg. Co. v. Tex. Elec. Coops., Inc.,*
    837 S.W.2d 273 (Tex. Ct. App. 1992)..............................................................32

*LoBiondo v. Schwartz,*
    199 N.J. 62 (2009) .......................................... 1, 2, 18, 20, 24, 26, 27, 28, 34, 35

*Louffe v. Mont. Dep't of Pub. Health & Human Servs.,*
    45 P.3d 10 (Mont. 2002)...................................................................................31

*Martinez v. E.J. Korvette,*
    477 F.2d 1014 (3d Cir. 1973) ...........................................................................23

*Mayflower Indus. v. Thor Corp.,*
    15 N.J. Super. 139 (Ch. Div. 1951), *aff'd,* 9 N.J. 605 (1952) ...........................34

*Miller v. Unger,*
    950 N.E.2d 241 (Ohio Ct. App. 2011)..............................................................32

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ............................................................16

*Neely v. First State Bank*,
  975 P.2d 435 (Okla. 1998)...............................................................31

*Nelson v. Miller*,
  607 P.2d 438 (Kan. 1980) ................................................................31

*Paul v. Nat'l Educ. Assn.*,
  189 N.J. Super 265 (Law Div. 1983), *aff'd*, 195 N.J. Super. 426
  (App. Div. 1984)...............................................................24, 25, 26

*Penwag Property Co. v. Landau*,
  76 N.J. 595 (1978) ...........................................................................18

*Polzin v. Gage*,
  636 F.3d 834 (7th Cir. 2011) ...........................................................17

*Potts v. Imlay*,
  4 N.J.L. 330 (Sup. Ct. 1816)............................................................26

*Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding,
  Inc.*,
  245 F. App'x 161 (3d Cir. 2007) ........................................................8

*Rainier's Dairies v. Raritan Valley Farms, Inc.*,
  19 N.J. 552 (1955) ...........................................................................34

*Rowe v. Morgan Stanley Dean Witter*,
  191 F.R.D. 398 (D.N.J. 1999)...........................................................17

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2000 (2018) ...............17

*Seibel v. Mittlesteadt*,
  161 P.3d 527 (Cal. 1986) .................................................................31

*Siliski v. Allstate Ins. Co.*,
  811 A.2d 148 (Vt. 2002)...................................................................31

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...........................................................17

*Toft v. Ketchum*,
  18 N.J. 280 (1955) ............................................................34

*Trabal v. Wells Fargo Armored Serv. Corp.*,
  269 F.3d 243 (3d Cir. 2001) ..........................................22, 23, 25, 26

*Tris Pharma, Inc. v. UCB Mfg.*,
  No. A-5808-13T3, 2016 WL 4506129 (App. Div. Aug. 29, 2016)
  (unpublished) ............................................................36, 37

*United States v. Glenn*,
  No. CR 15-99-1, 2019 WL 5061423 (E.D. Pa. Oct. 9, 2019) .............................8

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) ...............................................17

*Venuto v. Carella*,
  11 F.3d 385 (3d Cir. 1993) .................................................35

*Vickey v. Nessler*,
  230 N.J. Super. 141 (App. Div. 1989) .........................................34

*Wayne Land & Mineral Group LLC v. Delaware River Basin
  Comm'n*,
  894 F.3d 509 (3d Cir. 2018) ................................................16

*Westhoff v. Kerr S.S. Co.*,
  219 N.J. Super. 316 (App. Div. 1987) ..........................................20

*Wright v. City of Phila.*,
  409 F.3d 595 (3d Cir. 2005) ................................................22

**Constitutions and Statutes**

U.S. Const. amend. I ...............................................................1, 26, 34

42 U.S.C. § 1983 ...................................................................22

**Other Authorities**

Wright & Miller, 5A Fed. Prac. & Proc.: Civil 3d § 1327 ...................................17

Fed. R. Civ. P. 10(c) ...............................................................16

Fed. R. Civ. P. 12(b)(6)......................................................................7, 16, 38

Fed. R. Civ. P. 41(a)(1)-(2)...............................................................29

N.J. Court Rule 1:4-8 ........................................................................26

New Jersey Rules of Professional Conduct 3.1 and 4.4(a)....................26

*Prosser and Keeton, The Law of Torts* (5th Ed.1984), § 120................20

Restatement (Second) of Torts § 674 cmt. j (Am. Law Inst. 1977) ..........31, 33

Restatement (Second) of Torts § 675 cmt. d ........................................24

Restatement (Second) of Torts § 660. ................................................33

## **INTRODUCTION**

Plaintiff Joon Suk Ryu ("Ryu") brings this action for malicious use of process even though (1) Judge Linares already found that the underlying civil claims were supported by evidence sufficient to go to a jury, (2) the underlying claims were grounded in the sworn testimony of a witness, and (3) Ryu has already recovered his legal fees. This case exemplifies why this tort is so disfavored, and a review of the Complaint and integral documents shows that Ryu's claim must be dismissed.

"Malicious use of process" is the analog to "malicious prosecution" when the allegedly offending underlying action is civil rather than criminal. *LoBiondo v. Schwartz*, 199 N.J. 62, 89-90 (2009). Courts heavily disfavor this cause of action because it has the capacity to chill a litigant's First Amendment right of access to our courts and punish individuals for their good faith exercise of that right. *Id*. As the New Jersey Supreme Court put it:

> Our longstanding reluctance to permit parties to utilize these causes of action springs from our recognition that they carry with them the significant potential for abuse. Left unchecked, they create the possibility that a party will be forced to defend against one of these claims based on little more than having filed, and lost, in a court proceeding as to which the original defendant harbors resentment and anger. Decisions throughout all levels of our judiciary . . . caution that the appropriate remedial uses of these causes of action must not become swallowed up by new efforts to utilize them to punish the exercise of rights by those who, in good faith, have sought redress in our courts . . . .

*Id*. at 91.

1

To protect against the tort's significant potential for abuse, a plaintiff must plead (and prove) all of the following elements:  that the original suit lacked probable cause, was terminated in the plaintiff's favor, and resulted in a "special grievance" to the plaintiff.  *Id.* at 90.  Ryu has failed to meet this burden.  Indeed, this suit is exactly the scenario that the *LoBiondo* Court cautioned against, with one perverse twist:  defendant Bank of Hope (the "Bank") did not lose the underlying action. Instead, it voluntarily dismissed the suit after it became financially untenable to pursue.

Ryu's claim for malicious use of process stems from an underlying action for embezzlement (the "Embezzlement Action") brought against him by the Bank after a bank employee, Miye (Karen) Chon ("Chon") confessed to embezzling $1.5 million from the Bank and told the Bank that Ryu was involved in the embezzlement. The dismissal of the Embezzlement Action in no way exonerated Ryu.  Instead, the Bank voluntarily dismissed the matter after it was ordered to pay Ryu's legal fees pursuant to a corporate indemnity provision, rendering pursuit of the action against Ryu economically unfeasible.   When it dismissed the action, the Bank stated unequivocally in its dismissal motion that it believed its claims against Ryu to be meritorious.

These facts cannot support a claim for malicious use of process.  As an initial matter, the Bank had more than "probable or reasonable cause" to file and maintain

2

the Embezzlement Action against Ryu.  It had multiple statements under oath from a witness, which were corroborated by other evidence of motive and opportunity considered by the Bank at around the time it filed suit.  And the Bank's case did not get weaker after it filed suit—it got stronger, with Chon providing detailed deposition testimony about Ryu's complicity in the embezzlement.

Ryu sought dismissal of the Embezzlement Action on a motion for summary judgment, advancing the same arguments about Chon's credibility that form his allegations in this suit.  But Judge Linares, the former Chief Judge of this Court, rejected those credibility arguments and held that there was sufficient evidence to present the dispute to a jury.  This is conclusive proof that the Bank had reasonable or probable cause when it filed the Embezzlement Action, and maintained it throughout the life of the action.  Were it otherwise, the case would have been dismissed at the pleading stage or, at the very least, Judge Linares would have granted summary judgment in Ryu's favor.

Ryu has also failed to demonstrate that the Embezzlement Action was terminated in his favor.  Although the issue of whether a voluntary dismissal constitutes "favorable termination" appears to be one of first impression in this Circuit, we are unaware of any court in any jurisdiction finding that a financially-driven decision to voluntarily dismiss—one that did not speak to the liability of the

plaintiff and indeed maintained that the underlying action *had* merit—amounts to a "favorable termination" sufficient to sustain this disfavored cause of action.

Finally, Ryu has failed to plead a "special grievance" or interference with rights of a constitutional magnitude necessary to sustain a claim for malicious use of process. Instead, he has alleged nothing more than that the Embezzlement Action damaged his "reputation for business integrity" and suggested he "was an untrustworthy person who stole money," resulting in lost employment opportunity and emotional distress. It is well settled, however, that mental anguish, emotional distress or loss of reputation from the filing of a complaint are insufficient to sustain a claim for malicious use of process. *Brien v. Lomazow*, 227 N.J. Super. 288, 304 (App. Div. 1988).

If witness statements made under oath are not sufficient to support the Bank's honest belief that there were reasonable grounds evidencing that Ryu was involved in the embezzlement, we question what type of inquiry would be sufficient and how high a wall a wronged party must scramble over before it can seek redress from our courts without fear of liability. This action is exactly why claims for malicious use of process are looked upon with such disfavor—and why Ryu's claim against the Bank must be dismissed with prejudice.

## STATEMENT OF FACTS

### A.     Background of Bank of Hope and the Embezzlement

Between 2010 and 2013, BankAsiana (together with successors Wilshire Bank and Bank of Hope), was the victim of $1.5 million embezzlement by Karen Chon, an Operations Officer in the Bank's Fort Lee, New Jersey Branch.  Complaint ("Compl.") ¶¶ 1-2, 5.  Ryu was Chon's superior, working as the Bank's Senior Vice President and Chief Operating Officer out of the Bank's Palisades Park, New Jersey headquarters.  *Id.* at ¶¶ 37, 121.

In October 2013, Wilshire Bank acquired BankAsiana.  *Id.* at ¶ 30.  In January 2014, Ryu and the Bank's former CEO, H. S. Hur, left to take over New Millennium, a bank servicing the Northern-New Jersey market.  *Id.* at ¶¶ 38-40, 43.  Shortly thereafter, the Bank learned of irregularities in the Bank's Fort Lee Branch where Chon had worked, and undertook an investigation.  *Id.* at ¶ 46.

### B.     Karen Chon Stated that Ryu Was Involved in the Embezzlement

Bank employees met with Chon on January 22, 2014 and January 23, 2014, during which she admitted to embezzling money from the Bank by debiting certificate of deposit ("CD") accounts and crediting a vault cash account, then transferring funds from other CD accounts to back-fill the debt, and otherwise forging signatures either to take substantial sums of cash out of the vault or to transfer moneys into her husband's accounts at the Bank.  *Id.* at ¶¶ 46-48.

During her second interview with Bank employees, Chon stated that Ryu also was involved in the embezzlement. *Id.* at ¶¶ 47-48.  The Complaint describes Chon's January 23, 2014 interview with Bank representatives as follows:

> Chon stated that Ryu initially contacted Chon and asked her for a personal loan to which Chon responded no.  According to Chon, Ryu then asked Chon if there was any way that she could facilitate a $10,000 "loan" to him, which she understood to be a request to steal from the Bank.  As a result, Chon stole $10,000 from the Bank in cash and delivered it to Ryu, Chon told the Bank. Chon also stated that after the initial $10,000, she provided cash to Ryu whenever he asked for it.  She stated that sometimes she delivered the stolen cash to Ryu, and other times he came to the Fort Lee Branch to pick it up.  Chon stated that Ryu contacted her by BankAsiana company phone, not home or cell phone, when he wanted her to give him cash.  Chon also stated that money she embezzled went to her husband's business use, and she admitted to forging her husband's signature to issue checks from her husband's BankAsiana business account.

*Id.* at ¶ 48.

Chon implicated Ryu for a second time during a February 14, 2014 in-person meeting with the Bank's Chief Legal Officer, Lisa Pai.  The Complaint describes that in-person meeting as follows:

> At the meeting, Chon told Pai that she stole approximately $1.2 million, used approximately $500,000 to pay her husband's business debts and gave the remaining approximately $700,000 in cash to Ryu with no way to trace it and no proof that she had given any of it to him.  She told Pai that she had begun embezzling without Ryu's knowledge and that she thought she was merely borrowing temporarily from the accounts of her husband's business partners and her husband's sister, and that she had taken somewhere in the range of $100,000 to $200,000 when Ryu caught her.

*Id.* at ¶ 74.  The Bank's Chief Legal Officer stated she believed Chon.  *Id.* at ¶¶ 75, 78.  Ryu alleges that inconsistencies in Chon statements between the January interviews and the February interview should have led the Bank to reject her account altogether.  *Id.* at ¶ 77.

### C.    The Bank's March 2014 Report Showed Ryu's Financial Motive

In the Complaint, Ryu references and selectively quotes[1] two memoranda embodying the Bank's findings, as of February 25, 2014 and March 28, 2014, asserting in conclusory fashion that these reports contained "*no evidence of Ryu's involvement in the crime,*" *id.* at ¶ 84 (emphasis in original), were "nearly conclusive on Ryu's non-involvement in Chon's embezzlement," *id.* at ¶ 90, and contained "no evidence of Ryu's involvement," *id.* at ¶ 92.  But a review of the March 28, 2014 memorandum, drafted at around the time of the Bank's complaint against Ryu, *id.* at ¶ 83, reveals otherwise.

A review of Ryu's accounts and related accounts revealed several red flags, including evidence of Ryu's substantial financial hardship at around the time of the

---

[1]    When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).  For the Court's convenience, defendant Bank of Hope attached documents referenced in the complaint and matters of public record as attachments to the Moran Certification.

embezzlement.   According to the March 28, 2014 memorandum, ██████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████ Certification of Eric W. Moran, Esq. ("Moran Cert."), Ex. 1 at 5

(emphasis added).   It also revealed a ████████████████████████████████

████████████████████████████████████████████

Evidence showed that Ryu incurred substantial debt during the time of the

embezzlement, including debt to ████████████████ ████████████.   The Bank

discovered an apparent $15,000 loan to Ryu in May 2010 from ██████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ loan was

satisfied by another, $18,000 loan in January 2012 from ████████████████which

Ryu in turn repaid in $1,500 monthly installments ending in January 2013.

Investigators observed that ████████████████████████████████████████

██████████████████████████████████ The investigators also noted a $3,000

---

[2]    "A hard-money lender is one that lends money as a last resort to borrowers
who cannot get loans from other mainstream institutions because of severe time
constraints or other reasons, such as lack of acceptable credit." *Prof'l Cleaning &
Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 163 (3d
Cir. 2007); *United States v. Glenn*, No. CR 15-99-1, 2019 WL 5061423, at *1 (E.D.
Pa. Oct. 9, 2019).

check drawn on the account of ██████████████████, and $1,500 checks from Ryu back to ████ in December 2010 and 2012.  *Id.*

In fact, the Bank's investigation showed Ryu may have owed ████ close to $1 million during the time of the embezzlement.  In December 2011, Ryu wrote a $25,000 check to ██████████████ with the number "918,500" in the memo line.  *Id.* Given Ryu's habit of recording the loan balance in the memo line of repayment checks for the $18,000 ██████████████loan, the investigators interpreted Ryu's reference to "918,500" in the memo line of this check similarly.  *Id.* ████████ ████████████████████████████████████████████████████ ████████████████████████████████████.

The March 28, 2014 memorandum also noted that Chon told bank investigators that ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████.

### D.    Based on Reasonable Grounds, The Bank Filed the March 2014 Embezzlement Action

Based on Chon's statements directly implicating Ryu in the embezzlement, and the Bank's evidence of Ryu's substantial motive (Ryu's financial hardship, economic distress from failed personal business ventures, and substantial personal debt, including a $1 million loans to a "hard money" lender) and opportunity (Ryu's proximity, regular contact, and superiority in the chain of command to Chon), the

Bank filed suit against Chon, Ryu, and others for the embezzlement (the "Embezzlement Action"). Moran Cert., Ex. 2. It alleged that Ryu conspired in, and aided and abetted, Chon's embezzlement.

### E.   Chon's June 2016 and March 2018 Depositions Further Implicated Ryu

Ryu's Complaint references and selectively quotes from Chon's June 23, 2016 deposition, in which Chon directly implicated Ryu in the embezzlement. Compl. ¶¶ 114-125. During her June 2016 deposition, Chon testified that she met with Ryu monthly and that she would bring things to the Palisades Park branch of BankAsiana where Ryu worked. Moran Cert., Ex. 3 at 34:13-20. During one such occasion, Ryu confronted her about the fraud and demanded that she procure $30,000 for him. *Id.* at 35:2-37:8.

Chon testified that she spoke with Ryu two days later and said she would "lend him what he proposed." *Id.* at 38:23-39:18. Chon made transfers "to currency and coin account and thereafter removing the cash equivalent to the transfer amount out of the cash vault," and personally delivered the cash to Ryu. *Id.* at 40:18-41:13. Chon stated that Ryu made similar requests of her approximately ten times between 2010 and 2013, in increasingly larger amounts. *Id.* at 43:16-44:25. She testified that she embezzled money from the Bank in a like manner to meet Ryu's numerous requests, and personally provided him cash both in Ryu's Palisades Park office and at the Fort Lee branch where Chon worked. *Id.* at 44:25-45:23.

10

At her June 23, 2016 deposition, Chon also testified to facts that established substantial financial motive for Ryu to engage in the embezzlement. Chon testified that Ryu did not tell her why he needed the money, but she knew that he "had debt." *Id.* at 112:14-18. She stated ███████████████████████ had asked ███ ████████████ take out a personal loan and lend that money to Ryu. *Id.* at 117:15-118:2. Consistent with the March 28, 2014 memorandum, Chon testified that Ryu needed this loan because he already had taken his $25,000 personal loan from the Bank and "needed more money." *Id.* at 118:3-14.

Chon also testified about Ryu's substantial debt to "hard money lender" ███████████. Chon stated that ████ who was an account holder at the Bank, had told her that Ryu owed him money. *Id.* at 112:19-113:9. Chon testified that ███ would reference Ryu's debt when negotiating accommodations from the Bank when his business accounts became overdrawn, as they "always" did. *Id.* at 113:8-25. This testimony, too, matched the March 28, 2014 memorandum, which noted ████████████████████████████████████████████ ████████████████████████████████████

Ryu also cites to the transcripts of Chon's March 2018 depositions. Although Ryu alleges that Chon responded "I don't recall" 130 times, Compl. ¶ 142, Chon maintained that Ryu was involved in the embezzlement, consistent with her June 23, 2016 deposition. She testified that her June 23, 2016 deposition testimony was

truthful and accurate, and maintained that Ryu "forced" her to embezzle funds from BankAsiana.  Moran Cert., Ex. 4 at 144:20-145:3; 151:5-9; 164:12-25; 169:8-16; 172:22-173:6.

### F.   The FBI's Reports Further Inculpated Ryu

Ryu alleges that, in December 2016, reports of memoranda of the FBI's February 2014 interviews of Chon were disclosed to the Bank in discovery, and he cites to those reports in the Complaint.  According to those reports, the FBI interviewed Chon on February 4, 2014, during which she admitted to the embezzlement but stated that she "acted alone," and that she had previously lied to Bank employees about Ryu's involvement.  Compl. ¶¶ 51-53.  Chon stated that she implicated Ryu because Bank investigators "seemed to suspect Ryu," and Chon "agreed with them."  *Id.* at ¶ 53; Moran Cert., Ex. 5 at 4.

During her second meeting with the FBI on February 11, 2014, however, Chon again implicated Ryu in the embezzlement.  Consistent with her contemporaneous statements to Bank investigators, the Complaint alleges that Chon told the FBI that:

> approximately three years before, she found out that Ryu needed money, and around this same time she started taking money out of CD accounts at the Bank.  She said it was her idea to take money out of the CD accounts, and that the first time Ryu asked her to steal for him was around the same time he asked her for a personal loan.  She said she told Ryu about her scheme, and she claimed Ryu told her to get him some money and he would pay it back, but he never gave her any money back.  She claims that she funneled $600,000 to $700,000 to Ryu.

Compl. ¶ 54.  The FBI report of Chon's February 11, 2017 interview also reflects Chon's statements 

### G.    Judge Linares Denied Ryu's Summary Judgment Motion

With the benefit of all of the aforementioned discovery, on November 9, 2018, Ryu moved for summary judgment on the Bank's embezzlement-related claims.  In doing so, he highlighted the very assertions he now makes in the Complaint.  *See* Moran Cert., Ex. 7.  Ryu argued that Chon's inconsistent statements and inability to recall details during her March 2018 depositions rendered her testimony so "egregiously flawed" that the Court should not even consider it.  *Id.* at 21-22.  Ryu argued that Chon's testimony would be inadmissible and, even if considered, was insufficient to create a genuine issue of material fact.  *Id.* at 23-24.

On March 12, 2019, then-Chief Judge Linares held that Chon's deposition testimony created genuine issues of material fact concerning Ryu's involvement in the embezzlement.  The court concluded that:

genuine issues of fact remain as to the merits of the Embezzlement Claims. It is true that in contrast to the detailed testimony that Chon provided in her June 2016 deposition, Chon's March 2018 deposition testimony is lacking in the details concerning Ryu's involvement with the embezzlement. However, Chon did testify in March 2018 that Ryu forced her to embezzle funds for his benefit, which is consistent with her detailed June 2016 deposition testimony that Ryu asked her to procure funds for him after he discovered her embezzling conduct.

Furthermore, it is for a jury to determine whether Chon's June 2016 deposition testimony, which was provided closer in time to the alleged events at issue, is to be believed in view of her March 2018 deposition testimony, which was provided while Chon was in prison more than four years after the alleged events at issue. *See* Labeau v. Rentzis, No. 08-6300, 2010 WL 2521764, at *4 (D.N.J. June 14, 2010) (holding in a contract dispute that insofar as a party's inconsistent statements were concerned, "[i]t will be for the jury to determine the credibility of [the witness's] testimony in light of these inconsistencies, not this Court").

This matter presents issues concerning Chon's credibility that must be weighed by a jury, and nothing prevents Ryu from challenging Chon's credibility on cross-examination before a jury.

* * *

Therefore, the part of Ryu's motion wherein he seeks summary judgment in his favor on the Embezzlement Claims is denied.

Moran Cert., Ex.8 at 9-11.

## H.    The Bank Dismissed the Embezzlement Action for Economic Reasons

Ryu claims that even the Bank's motion to voluntarily dismiss the Embezzlement Action was malicious use of process, and quotes from that motion in the Complaint. Compl. ¶ 20. However, in that motion, the Bank was clear that the dismissal had nothing to do with the merits. Moran Cert., Ex. 9 at 6-7. The Bank

informed the Court that the reason for dismissal had only to do with "recent development in the related civil action (the 'Advancement Action') commenced by Ryu in February, 2018 against [the Bank], seeking advancement of attorney's fees allegedly incurred in connection with the Government Investigation, this action, and the advancement Action." *Id.* at 3. The Bank argued that dismissal was appropriate because it had "had to advance Ryu's attorneys a total of $1,315,446.87" in fees, and "will have to continue to make monthly advancements to Ryu's attorneys for this action and the Advancement Action, as well as Ryu's cross-appeal to the Second Circuit [of the order in the Advancement Action]." *Id.* at 6. Thus, the Bank stated, it was "in its best interest to voluntarily dismiss its claims against Ryu at this time and attempt to further mitigate its litigation costs." *Id.* The Bank stated its belief that "its claims against Ryu have merit," *id.*, which is the statement that Claimant contends is actionable here. Rather than "further expend its own resources—or the resources of this Court," the Bank argued "it would be prudent to voluntarily dismiss its claims before any more work is required." *Id.* at 7. On April 11, 2019, the Court granted the Bank's application for voluntary dismissal. Moran Cert., Ex. 10 at 3.

Ryu filed this action on October 15, 2019.

**ARGUMENT**

## I.   RYU HAS FAILED TO STATE A CLAIM FOR MALICIOUS USE OF PROCESS

A complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Under this standard, the court must accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). However, the Court need not credit bald assertions or legal conclusions alleged in the complaint.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Nor must it accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse,* 132 F.3d at 906).

In deciding a motion to dismiss, a court may consider the allegations in the complaint, exhibits, matters of public record, and documents upon which the plaintiff's claims are based without converting the motion into one for summary judgment.  Fed. R. Civ. P. 10(c); *Wayne Land & Mineral Group LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 527 (3d Cir. 2018); *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).  The failure of a plaintiff

to attach an intrinsic document to the complaint does not preclude a court from considering it. *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 405-06 (D.N.J. 1999) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426)).

This rule seeks to prevent a plaintiff from maintaining a claim "by extracting an isolated statement from a document and placing it in the complaint, even though *if the statement were examined in the full context of the document, it would be clear that [there was no claim].*" *Dix v. Total Petrochemicals USA, Inc.*, No. CIV. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) (citing *In re Burlington Factory Sec. Litig.*, 114 F.3d at 1426) (emphasis added). Indeed, "by attaching an exhibit, the pleader often may foreclose recovery on a theory of relief that what he claims is available to him since the document itself may reveal the existence of an insurmountable defense." Wright & Miller, 5A Fed. Prac. & Proc.: Civil 3d § 1327, at 45051 & n.18; *see Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011).

Thus, "the Court need not accept as true allegations that contradict matters properly subject to judicial notice or exhibit." *Garcia v. New Jersey State Prison*, No. CIV. 05-3159 AET, 2007 WL 2669332, at *1 (D.N.J. Sept. 6, 2007); *see also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2000 (2018); *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The

rule on intrinsic documents is important in cases, such as this, where the documents upon which a plaintiff explicitly relies reveal the legal insufficiency of his claim.

Malicious use of process is a highly disfavored cause of action because of its tendency to chill free access to our courts. *Penwag Property Co. v. Landau,* 76 N.J. 595, 597-98 (1978). Courts have expressed grave concerns over the potential that unsuccessful litigants are "forced to defend against one of these claims based on little more than having filed, and lost, in a court proceeding as to which the original defendant harbors resentment and anger." *LoBiondo*, 199 N.J. at 90.

This disfavor is manifested in the heavy requirements imposed upon a plaintiff to establish a *prima facie* case. In his pleading, Ryu must allege that the original suit was (1) instituted without reasonable or probable cause; (2) actuated by malicious motive; (3) ended in favor of plaintiff and (4) resulted in special grievance to plaintiff. *Id.* at 90. "The absence of any one of these elements is fatal." *Brien*, 227 N.J. Super. at 300.

A review of the allegations, intrinsic documents, and related public filings reveals three flaws that are fatal to Ryu's malicious use of process claim. *First*, Ryu has failed to sufficiently allege that the Bank lacked probable cause. *Second*, the voluntary dismissal of the embezzlement-related claims for economic reasons was not a termination favorable to Ryu. *Third*, Ryu's allegations of reputational harm

fall short of a "special grievance" under New Jersey law.  For these reasons, Count I of the Complaint must be dismissed.

### A. The Complaint Fails to Establish a Lack of Reasonable or Probable Cause

Ryu has not plausibly alleged that the Bank lacked probable cause in instituting or maintaining the Embezzlement Action.  Direct testimonial evidence of Ryu's complicity, as well as substantial evidence of Ryu's motive and opportunity to aid and abet the embezzlement, formed reasonable grounds to bring the Embezzlement Action.  Ryu's allegations that the Bank failed to investigate matters to his liking before filing the Embezzlement Action are insufficient to defeat this motion.  Nor does the law require a party to resolve all issues of credibility before filing a complaint.  Indeed, the Bank's reasonable basis became stronger as the Embezzlement Action wore on, with more specific, sworn inculpating statements from Chon, culminating in a finding by Judge Linares that evidence underlying the Embezzlement Action was sufficient to go to a jury.  Because the Complaint and integral documents fail to establish a lack of probable cause, Count I of the Complaint must be dismissed.

### 1.   Ryu Fails to Plausibly Allege the Bank Lacked Probable Cause to Bring the Embezzlement Action

A defendant has sufficient cause to bring a civil action when the facts and circumstances would lead a reasonably prudent person to believe there was a "good or sound chance of establishing the claim to the satisfaction of the court of jury." *LoBiondo*, 199 N.J. at 93.  The reasonable or probable cause inquiry is an "objective analysis" into "whether, in the prior suit, the facts supported the actor's 'honest belief' in the allegations."  *Id.* (citations omitted).  Moreover, "[p]robable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in dispute."  *Id.*  A court should apply a reasonable person standard to determine whether a plaintiff had an "honest belief" in the allegations asserted in the lawsuit.  *Id.*  The standard for probable or reasonable cause is "obviously less in the way of grounds for belief" in bringing a "civil rather than a criminal suit," and "greater latitude" is afforded where the underlying case was a civil one.  *Westhoff v. Kerr S.S. Co.*, 219 N.J. Super. 316, 321 (App. Div. 1987) (quoting *Prosser and Keeton, The Law of Torts,* (5th Ed.1984), § 120 at 843)).

Where probable or reasonable cause is evident from the pleadings, dismissal of a malicious use of process claim is appropriate.  *Fidelity Eatontown, LLC v. Excellency Enter., LLC*, Civ. A. No. 3:16-cv-3899-BRM-LHG, 2017 WL 2691417, at *8 (D.N.J. Jun. 22, 2017) (dismissing malicious use of process claim, and holding,

20

"[a]s the Court finds Plaintiffs had probable cause to bring the lawsuit, Kennedy is unable to meet the first element of malicious use of process and it is not necessary to analyze the remaining elements."). Such is the case here.

A review of the Complaint and documents intrinsic thereto demonstrates that the Bank had reasonable grounds to file the Embezzlement Action. First, the Bank had Chon's first-hand account detailing Ryu's role in the embezzlement, *see* Compl. ¶¶ 47-48, 74, which alone would have been enough to proceed. Second, the Bank had evidence of Ryu's ***motive*** to aid and abet the embezzlement, ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ *See* Compl. ¶¶ 84-92; Moran Cert., Ex. 1 at 5. Third, it had evidence of Ryu's ***opportunity*** to commit the embezzlement: he was geographically proximate to Chon; had regular monthly access to her; and as the COO, was in a position to identify irregular account activity and confront her to request money, as Chon said he did. *See* Moran Cert., Ex. 3 at 34:13-20, 35:2-37:8.

##### 2. The Law Does Not Require Resolution of All Conceivable Issues and Questions of Credibility before Filing a Civil Action

Ryu cannot plausibly claim that the Bank lacked any one of these bases to proceed; indeed, every one of them is stated in the Complaint or in documents intrinsic thereto. Instead, he alleges, *first*, that the Bank should have disregarded

21

Chon's statements altogether due to alleged inconsistencies[3] and, *second*, the Bank should have investigated certain leads before filing the Complaint.[4]

But a "reasonable belief which constitutes probable cause" does not demand that a complainant "evaluate the totality of the circumstances both inculpatory and exculpatory," as a trier of fact would, before filing a complaint. *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 250-51 (3d Cir. 2001). No articulation of "probable cause" standards requires the correct resolution of conflicting evidence, or even that credibility determinations, in retrospect, were accurate. *Cf. Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005) (noting in a malicious prosecution case brought against police officers pursuant to 42 U.S.C. § 1983 that "the standard does not require that officers correctly resolve conflicting evidence or

---

[3]   *See, e.g.*, Compl. ¶ 77 ("There were significant inconsistencies and obvious untruths in what Chon told the Bank"); ¶ 78 ("The Bank recognized that there were inconsistencies, but purportedly decided to credit Chon's story"); ¶ 94 ("The Bank uncritically accepted (or pretended to accept) [Chon's] explanation"); ¶ 110 ("the Bank knew or should have known at the time it initiated suit that there were strong indications that Chon's accusations were unworthy of belief and untrue.").

[4]   *See, e.g.*, Compl. at ¶ 79 ("The Bank decided not to conduct formal interviews of the employees who had spoken to Chon"); ¶ 95 ("The Bank did nothing to investigate this possibility."); ¶ 96 ("the Bank failed to investigate numerous other transactions and unexplained financial items"); ¶ 99 ("any reasonable banker or other person investigating the crime would have been particularly interested, and indeed, obligated, to find out what happened to the money"); ¶ 100 ("It could have waited while it completed its investigation and further investigated if necessary."); ¶ 111 ("There was no reason . . . that the Bank could not have pursued further investigation").

22

that their determinations of credibility, were, in retrospect, accurate.").  "Probable cause" does not depend on the state of the case "in point of fact," but only the "honest and reasonable belief of the party prosecuting." *Martinez v. E.J. Korvette*, 477 F.2d 1014, 1016 (3d Cir. 1973).  "No more is demanded than a well-grounded suspicion or belief." *Trabal*, 269 F.3d at 251 ("the law does not require that a prosecutor explore every potentially exculpatory lead before filing a criminal complaint or initiating a prosecution.").  Under the law governing "reasonable or probable cause," alleged inconsistencies in Chon's statements thus did not negate the Bank's reasonable basis for proceeding with that action.

It is important to note that the only allegations regarding Chon's credibility known to the Bank in March 2014—*when the Bank filed the Embezzlement Action*—were that Chon *did not* implicate Ryu during a January 22, 2014 interview with Bank investigators, and then *did* implicate him during a January 23, 2014 interview. Compl. ¶¶ 46-47.  Ryu alleges that a memorandum of the FBI's February 7, 2014 interview of Chon revealed additional credibility issues, but concedes that the Bank did not receive that memorandum until December 2016, *more than two years after* it filed the Embezzlement Action.  Compl. ¶ 133 (alleging "the Bank had copies of the memos since December 2016.").  Thus, even if the law regarded a party's failure to resolve all witness credibility issues before bringing an action (it does not), the

23

initial reluctance of a witness would not negate that party's reasonable or probable cause to file a civil action.

Nor do Ryu's hind-sight allegations about what he feels the Bank should have investigated satisfy *LoBiondo's* lack of "reasonable or probable cause" element. Given "the disfavored nature of [malicious use of process] actions, the burden to investigate prior to instituting suit *is slight*." *Paul v. Nat'l Educ. Assn.*, 189 N.J. Super 265, 271 (Law Div. 1983) (emphasis added), *aff'd*, 195 N.J. Super. 426 (App. Div. 1984)[5] (emphasis added)*; see also* Restatement (Second) of Torts § 675 cmt. d (stating "it is enough if [the existence of the facts] is not certain but [the plaintiff] believes he can establish their existence to the satisfaction of the court and jury"). Malicious use of process claims that hang their hats on a party's failure to investigate should be dismissed.

In *Paul*, for example, the plaintiff brought a malicious use of process claim against the defendant alleging that the only source of the defendant's information came from a witness who, one month prior to filing of the complaint, refused to sign an affidavit supporting his statements, and who indicated to the defendant that his

---

[5]     The New Jersey Appellate Division in *Paul* affirmed the trial court's "slight" standard of inquiry before bringing a civil suit, provided only that it not "be read to confer immunity from the risk of malicious prosecution in cases where *no thought was given* by the original suitor to the reliability of the information motivating his action." 195 N.J. Super. at 429 (emphasis added).

earlier statements were based on rumor and speculation.  189 N.J. Super at 271.  The court dismissed the plaintiff's complaint for failing to establish that the original action was instituted without probable or reasonable cause.  *Id.* at 272.  In doing so, the *Paul* court found that even assuming plaintiff's version of the events to be true, and although the defendant had "meager grounds" to pursue the action, it was not "totally unreasonable for [the defendant] to believe that these now questionable allegations . . . could be established to the satisfaction of the court after adequate discovery had been completed."  *Id.* at 271.

The Third Circuit's decision in *Trabal v. Wells Fargo Armored Service Corp.*, also is instructive.  There, a witness made two sworn statements that he saw the plaintiff throw a bag of money into another employee's armored truck and then make an unauthorized stop and not enter it on his official log.  269 F.3d at 250.  The plaintiff argued his former employer was reckless in failing to investigate its witness's credibility, conduct interviews, and examine credit records before initiating criminal action.  *Id.* at 250-51.  In rejecting those arguments, the Third Circuit held that "every potentially exculpatory lead" need not be explored before filing a complaint, and that the statement along with the corroborating circumstances were sufficient support of probable cause.  *Id.* at 251.  Accordingly, the Third Circuit reversed the trial court's denial of defendant's judgment as a matter of law, and remanded for entry of judgement in its favor.  *Id.* at 248.

Indeed, no pleading or other standard governing lawyers' conduct demands the kind of pre-litigation credibility determination that Ryu's Complaint suggests. *See*, *e.g.*, *LoBiondo*, 199 N.J. at 97-98 (reviewing the standards governing lawyers in New Jersey Rules of Professional Conduct 3.1 and 4.4(a), and N.J. Court Rule 1:4-8 governing frivolous pleadings).   Sustaining Ryu's Complaint under these circumstances would effectively require parties, and inevitably lawyers, to make full credibility determinations and resolve all issues before exercising their First Amendment right of access to the Courts, or risk malicious use of process liability should their claim prove unsuccessful.   That is just the outcome against which centuries of New Jersey jurisprudence has warned.   *See id.* at 89 (citing *Potts v. Imlay,* 4 N.J.L. 330, 334-35 (Sup. Ct. 1816)).

The Bank's grounds for filing the Embezzlement Action, as gleaned from the Complaint and intrinsic documents, far exceeded the "meager grounds" that warranted dismissal of the malicious use of process claim in *Paul*.  And, as in both *Paul* and *Trabal*, Ryu's allegations that the Bank relied on incredible testimony and failed to investigate certain issues are insufficient because the law does not demand that all issues and credibility determinations be resolved before filing a civil complaint.   Accordingly, Ryu has failed to plausibly allege that the Bank lacked reasonable or probable cause when it initiated the Embezzlement Action, and Count I should be dismissed.

26

### 3.    The Bank's Grounds for Maintaining the Embezzlement Action Increased after the Embezzlement Action was Filed

Not only does the Complaint reveal that the Bank had reasonable grounds to file the Embezzlement Action at the outset, it shows that those grounds strengthened with further discovery. Far from being "instituted without reasonable or probable cause," as *LoBiondo* requires, Judge Linares found that a reasonable jury could have found in the Bank's favor. For this further reason, Count I must be dismissed.

Chon's June 2016 deposition detailed Ryu's involvement in the embezzlement. Chon's testimony that Ryu confronted her about her embezzlement activities, threatened that her conduct could be a "big," "criminal matter," that Chon was "scared about what [she] did," that Ryu asked Chon to "lend him money," and statements that Ryu profited from the embezzlement all were consistent with prior statements she made to Bank employees. Compl. ¶¶ 114-125; Moran Cert., Ex. 3 at 35:2-37:8. Moreover, Chon confirmed Ryu's debts to "hard money lender" ███████ ██, consistent with the Bank's prior investigation and the March 28, 2014 memorandum and findings about his financial motive. *Compare* Moran Cert., Ex. 1 at 5 *with* Ex. 3 at 112:19-113:9. Ryu alleges, again, that Chon's credibility was undermined by a lack of responsiveness during her March 2018 deposition and the memorandum of her February 4, 2014 FBI interview revealed to the Bank in December 2016; however, at that deposition and in a subsequent FBI memorandum of interview, Chon maintained Ryu's complicity in the embezzlement and confirmed

his substantial financial debt to ██████████████████████████████

████" Moran Cert., Ex. 4 at 144:20-145:3; 151:5-9; 164:12-25; 169:8-16; 172:22-173:6.

Judge Linares' denial of Ryu's summary judgment motion based on Chon's June 2016 and March 2018 deposition testimony removes any doubt that the Bank had reasonable grounds for the Embezzlement Action. As this court is well aware, summary judgment may be denied only in the face of a "genuine" dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"; rather, the judge must find that "*the evidence is such that a reasonable jury could return a verdict for the nonmoving party*." *Id.* at 247-48 (emphasis added). Similarly, reasonable or probable cause under *LoBiondo* is present if a reasonable prudent person would believe there is a "*reasonable belief that there was a good or sound chance of establishing the claim to the satisfaction of the court or the jury*." *LoBiondo*, 199 N.J. at 93. Where a *judge* determines the evidence is such that a reasonable jury could return a verdict in the Bank's favor, as Judge Linares did here, it follows that an objective, *reasonable prudent person* would believe that he or she had a "good chance" of success. These standards cannot otherwise be reconciled.

Because the Bank's ground to proceed with the Embezzlement Action only got stronger as the litigation proceeded, culminating in a judicial finding that the evidence was "such that a reasonable jury could return a verdict" in the Bank's favor, this Court should dismiss Ryu's malicious use of process claim for failure to state a claim upon which relief can be granted.

### B.      The Embezzlement Action did Not Terminate in Ryu's Favor

Ryu alleges that the "Embezzlement Action terminated in his favor because the Bank voluntarily withdrew [the Complaint] with prejudice."   Compl. ¶ 204. However, a voluntary dismissal does not constitute "favorable termination" for purposes of a malicious use of process claim where it was dismissed purely for economic reasons, and the Bank went on the record to confirm its belief that its claims against Ryu continued to have merit.  Because Ryu cannot demonstrate that the underlying Embezzlement Action was terminated in his favor, his claim for malicious use of process must be dismissed.

By way of background, the Embezzlement Action terminated via the Bank's motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)-(2); however, the Bank's voluntary dismissal of the Embezzlement Action was based purely on the economic decision to discontinue an action that no longer made financial sense.  *See* Moran Cert., Ex. 9 at 7.  The Bank's dismissal motion was *explicit* on this point.  It stated that dismissal was sought "because of the recent developments in a related

civil action, pending in the United States District Court for the Southern District of New York [(the "Advancement Action")], which has caused Bank of Hope to incur costs that will soon exceed the amount it has sought to recover in this action." *Id.* at 1.

In the Advancement Action, Hope Bancorp, Inc., Bank of Hope's holding company, was ordered to advance Ryu's attorney a total of $1,315,446.87 in legal fees pursuant to a provision in the merger agreement. *Id.* at 6. Had the Bank continued pursuing the Embezzlement Action in the face of that ruling, it would have been forced to pay Ryu's continuing legal fees, as well as its own. *Id.* Accordingly, "Bank of Hope believe[d] that it [was] in its best interest to voluntarily dismiss its claims against Ryu . . . to further mitigate its litigation costs." *Id.*. At the same time, the Bank was unequivocal that it "continue[d] to believe that its claims (and defenses) [were] meritorious, and that, if tried, it would prevail on them." *Id.* In sum, the Bank's decision to voluntarily dismiss the Embezzlement Action against Ryu with prejudice was in no way related to the merits of that case. Instead, it was motivated purely by economic considerations—it could not pursue the matter without losing money.

We are not aware of any court—in any jurisdiction—that has found a "favorable termination" sufficient to sustain a malicious use of process claim under these circumstances. Most jurisdictions follow the approach recommended by

30

comment j to the Restatement (Second) of Torts section 674.[6]   That provision instructs:

> Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn.

Restatement (Second) of Torts § 674 cmt. j.  In other words, "[w]hen a termination or dismissal indicates in some fashion that the accused is innocent of wrongdoing[,] it is a favorable termination."  *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986).  Under the Restatement, therefore, a voluntary dismissal *could* constitute a favorable termination provided the circumstances surrounding it indicate that the original defendant was innocent of wrongdoing.

---

[6]      *See*, *e.g.*, *Frey v. Stoneman*,  722 P.2d 274, 279 (Ariz. 1986) (holding that a termination will be deemed favorable based on the circumstances of the dismissal); *Seibel v. Mittlesteadt*, 161 P.3d 527, 531 (Cal. 1986) (reasoning that the judgment as a whole must be construed to determine whether a dismissal is a favorable termination); *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1354 (Ill. 1997) (adopting the Restatement approach and considering the underlying circumstances of dismissal); *Nelson v. Miller*, 607 P.2d 438, 446 (Kan. 1980) (following the Restatement and examining the underlying circumstances to determine if a prior dismissal is a favorable termination); *Louffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10 (Mont. 2002) ("[T]he law in Montana affords a presumption that voluntary dismissal of an action by the plaintiff reflects favorably for the defendant unless evidence demonstrates the converse."); *Neely v. First State Bank*, 975 P.2d 435, 437 (Okla. 1998) (reviewing the circumstances underlying a dismissal to determine whether the dismissal was a favorable termination); *Siliski v. Allstate Ins. Co*., 811 A.2d 148, 151-52 (Vt. 2002) (adopting the Restatement approach and examining the circumstances of the prior dismissal).

Other jurisdictions hold that a voluntary dismissal cannot serve as a favorable termination in a malicious prosecution case, as a matter of law.[7]  These courts reason that a voluntary nonsuit is not an adjudication of the merits of the case but is merely a procedural option available to plaintiffs as a matter of right.  As the Texas Court of Appeals put it:  "A voluntary nonsuit cannot be a favorable termination because it neither adjudicates rights nor litigates issues but merely places the parties in the position in which they were prior to the filing of the claim."  *KT Bolt Mfg. Co. v. Tex. Elec. Coops., Inc*., 837 S.W.2d 273, 275 (Tex. Ct. App. 1992).

Whether this Court follows the Restatement (Second) approach and examines the circumstances surrounding the voluntary termination or the approach adopted by courts in Tennessee, Colorado, Texas and Ohio, Ryu has not sufficiently alleged that the Embezzlement Action terminated in his favor.

Indeed, the Bank explicitly stated in its motion to dismiss the Embezzlement Action that *the only reason* it elected to forego those claims was economic.  To the extent the dismissal touched on the merits at all, it maintained that the Embezzlement

---

[7]     *See, e.g., Hewitt v, Rice*, 154 P.3d 408, 416 (Colo. 2007) (declining to examine the underlying circumstances of a voluntary dismissal because it "would lower the burden of proof in a malicious prosecution case and deter the settlement of cases"): *Miller v. Unger*, 950 N.E.2d 241, 244 (Ohio Ct. App. 2011) (stating that a voluntary dismissal of a complaint is not a favorable termination for purposes of malicious prosecution); *KT Bolt Mfg. Co. v. Tex. Elec. Coops., Inc*., 837 S.W.2d 273, 275 (Tex. Ct. App. 1992); *Himmelfarb v. Allain*, 380 S.W.3d 35, 39 (Tenn. 2012) (a voluntary nonsuit is not considered a favorable termination in a malicious prosecution action).

Action *had* merit.  Moran Cert., Ex. 9 at 6.  Particularly given the evidence against Ryu, as described herein, and Judge Linares' denial of summary judgment, the Bank had every reason to believe that its embezzlement claim would succeed at trial. Because the circumstances of the voluntary dismissal do not touch upon the merits of the litigation, it did not "terminate favorably" for Ryu.  *See Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (holding that the favorable termination element is satisfied only if the prior criminal case was "disposed of in a way that indicates the innocence of the accused"); *see also* Restatement (Second) of Torts § 674 cmt. j ("In determining the effect of withdrawal the same considerations are decisive as where criminal charges are withdrawn"); *id.* at § 660 (noting that the withdrawal of criminal proceedings is not favorable if it is pursuant to an agreement of compromise, which indicates that the question of guilt is left open).

If this Court follows the Restatement (Second) approach, then Ryu's claim fails without the need for the Court to examine the circumstances surrounding the voluntary termination.  If this Court follows the Restatement (Second) approach, then the circumstances that Ryu has alleged cannot support a finding that the Bank's voluntary dismissal for economic reasons, and statement of continued belief in the merits of the Embezzlement Action, are insufficient to establish a "favorable determination."  For this further reason, the malicious use of process claim must be dismissed with prejudice.

### C.     Ryu has Failed to Plead a "Special Grievance"

Because malicious use of process poses such a threat of abuse, and so grave is the risk that its misuse could chill first amendment access to the courts, New Jersey courts have required plaintiffs to establish a "special grievance" in order to sustain a claim. *Mayflower Indus. v. Thor Corp.*, 15 N.J. Super. 139, 152 (Ch. Div. 1951), *aff'd*, 9 N.J. 605 (1952). This added element "reflects the significantly different implications that flow from being sued in a civil matter as compared to being prosecuted on a criminal charge. *Vickey v. Nessler*, 230 N.J. Super. 141, 148-49 (App. Div. 1989).

As its name suggests, a "special grievance" must be something beyond the ordinary consequences that flow from being sued; otherwise every prevailing defendant would become a malicious-use-of process plaintiff. Liberty or property must be encumbered by the underlying civil suit, to mimic the injuries to liberty that attend criminal proceedings. *LoBiondo*, 199 N.J. at 90. Examples of a "special grievance" include the institution of disbarment proceedings; the filing of license revocation proceedings before a relevant agency; the granting of an injunction or restraining order or the filing of a *lis pendens*—none of which occurred here. *See Toft v. Ketchum*, 18 N.J. 280 (1955) (disbarment); *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552 (1955) (license revocation); *Mayflower Indus.*, 15 N.J. Super. 139 (injunctions).

It is well settled that mental anguish, emotional distress, or loss of reputation from the filing of a complaint are not special injuries required to sustain a malicious prosecution action. *See, e.g., Brien,* 227 N.J. Super. at 304*; Fielder Agency v. Eldan Const. Corp.*, 152 N.J. Super. 344, 352-54 (Law Div. 1977). It is equally clear that the alleged interference of constitutional magnitude must "result directly from process issued in the proceeding that is said to have been malicious." *Venuto v. Carella*, 11 F.3d 385, 389 (3d Cir. 1993) (emphasis in original).

Ryu alleges no grievance that is not, or does not derive from, insufficient reputational harm and emotional distress. Ryu alleges the Embezzlement Action resulted in harm to his "reputation for business integrity," painted him as "an untrustworthy person who stole money," and left him without work or business opportunity in the "Korean American banking or anywhere else since March 2014," Compl. ¶¶ 173-75, 179-81. All of his purported "special grievance" allegations flow from the kind of reputational harm that the *Brien* case deems insufficient. Moreover, *LoBiondo* instructs that the "liberty" that must be injured to constitute a "special grievance" contemplates the deprivation of a "bundle of freedoms" such as freedom of speech and freedom to petition the government. 199 N.J. at 96. Such constitutionally-based freedoms differ from the kind of business and employment consequences of being sued that Ryu asserts, which are not of the same constitutional magnitude.

A similar "damage to business reputation" theory was squarely rejected in *Fielder Agency v. Eldan Construction Co*. There, plaintiff alleged a "special grievance" based on "injury to defendant's reputation and business resulting from plaintiff's alleged slanderous remarks" that defendant evaded debts. *Fielder Agency,* 152 N.J. Super. at 348. The court considered whether "injury to a defendant's reputation for financial responsibility in the operation of its business is such a special damage sufficient to sustain a cause of action for malicious prosecution." *Id.* at 350-51. The *Fielder* court's answer was "no," because "[t]he institution and prosecution of the complaint did not result in any restraint upon the operation of defendant's business or use of its property." *Id*. at 351; *see also Component Hardware Grp, Inc. v. Trine Rolled Molding Corp*., No. 05-891, 2007 WL 2177667, at *6-7 (D.N.J. July 27, 2007) (denying as futile plaintiff's motion to amend its complaint, and holding that the loss of business, and failure to obtain new business, as a result of defendant's allegedly false allegations that it was selling filters illegally did not amount to "special grievances").

The same is true here. Alleged harm to Ryu's reputation and resulting loss of income and mental anguish flowing from the Embezzlement Action are legally insufficient to implicate the kind of liberty or property interests necessary to allege "special grievance." The New Jersey Appellate Division reached the same conclusion in *Tris Pharma, Inc. v. UCB Mfg.*, No. A-5808-13T3, 2016 WL 4506129,

at *7 (App. Div. Aug. 29, 2016) (unpublished).  There, Tris Pharma brought a malicious use of process claim against UCB premised on UCB's earlier suit against Tris Pharma alleging that its former employee, Yu-Hsing Tu ("Tu") breached his employment agreement with UCB by disclosing confidential information to Tris Pharma.  Tris Pharma alleged that UCB's interference with its "liberty to hire" Dr. Tu and Dr. Tu's "liberty to work" with Tris Pharma amounted to a "special grievance."  In affirming the Chancery Division's dismissal of Tris Pharma's suit, the Appellate Division held "the potential business consequences of UCB's lawsuit are not the type of interference of liberty or property interest which satisfies the special grievance requirement of a malicious use of process claim."  *Id*. at *6.

In an obvious nod to *Giri v. Rutgers Casualty Insurance Co.,* 273 N.J. Super. 340, 434 (App. Div. 1994), Ryu alleges that the Bank's lawsuit "effectively" put him "out of business" for over five years.  Compl. ¶¶ 205-07.  The inclusion of the word "effectively" is telling because Ryu cannot point to any legal process that barred him from employment.

Unlike this case, the medical malpractice insurance of the physician in *Giri* was discontinued as "a direct result" of the allegedly malicious malpractice claim, effectively enjoining that doctor from practicing.  273 N.J. Super. at 349.  The *Giri* court acknowledged that a "blemish to [one's] professional reputation," such as Ryu's alleged harms, would not have been enough.  *Id.* at 349 (citing *Ackerman v.*

37

*Lagano,* 172 N.J. Super. 468, 476, 412 A.2d 1054 (Law Div. 1979) ("plaintiff's claimed damage to his professional reputation would not constitute a 'special injury' since such damage is potentially present in every malpractice claim")).  Instead, Ryu can only allege that he was "disgraced" by the Bank's lawsuit (*i.e.*, insufficient reputational harm), which in turn resulted in lost employment opportunities and emotional distress.  Those allegations are insufficient.

Ryu's "special grievance" allegations are more like the ones asserted by the plaintiffs in *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 362 (D.N.J. 2000), in which the plaintiffs claimed that malicious consumer fraud proceedings resulted in tremendous negative publicity, causing the loss of plaintiffs' good names, reputation and general standing, and a corresponding loss of "business opportunities and existing business."  *Id.* at 362.  Then-District Judge Greenaway held that plaintiffs had alleged "precisely the type of injury that New Jersey courts have declared is not a special grievance."  *Id*. at 370.  Because the "ability to conduct business" resulting from reputational harm was not cognizable as a special grievance under New Jersey law, the Court granted defendant's 12(b)(6) motion.  *Id.* at 371 & n.26 ("to the extent that Plaintiffs' ability to conduct business was harmed as a result of any reputational injury stemming from the consumer fraud proceedings, the New Jersey case law discussed above appears to have foreclosed that as a special grievance.").

Emotional distress, damage to reputation, and resulting loss of business or employment opportunities do not amount to a "special grievance" sufficient to sustain a cause of action for this disfavored tort.  Crediting the allegations in Ryu's Complaint, the most that can be said is that the suit affected Ryu's reputation.  As the *Fiedler Agency* court recognized:

> To permit the prosecution of a claim for malicious institution of a civil action based upon damages which do not constitute a special grievance would result in litigation becoming interminable, with the failure of one suit being grounds for the institution of another.  Also, the assertion of rights either by means of a complaint, answer or counterclaim might well be compromised for fear of liability resulting from the failure of the action.  This would be contrary to the policy of the law which is to open the courts to all who have a grievance, and seek remedial action therefor, without restraint through fear of liability in the event the action fails.  In the ordinary case, i.e., where the groundless claim results in no injury peculiar to a defendant or no interference with his liberty or property, a plaintiff should not be required to defend against a subsequent suit charging him with malicious litigation.

152 N.J. Super. at 351-52.  Given the absence of any such special injury alleged in this case, Ryu has failed to establish the cause of action for malicious use of process and his claim must be dismissed.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should dismiss Count I of Ryu's Complaint in its entirety with prejudice.


By:  /s/ ERIC W. MORAN
    Eric W. Moran, Esquire
    Theodora McCormick, Esquire
    **EPSTEIN BECKER & GREEN, P.C.**
    875 Third Avenue
    New York, New York 10022
    (212) 351-4500 (phone)
    (212) 878-8600 (fax)

    150 College Road West, Suite 301
    Princeton, New Jersey 08540
    (609) 455-1540 (phone)
    (609) 228-5318 (fax)

    Attorneys for Defendant
    Bank of Hope

Date: December 11, 2019