# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SUK JOON RYU, a/k/a James S. Ryu

        Plaintiff,

    v.

BANK OF HOPE,

        Defendant.

Civil Action No.: 2:19-18998 (KM)(JBC)

*Document Electronically Filed*

---

# BANK OF HOPE'S BRIEF IN OPPOSITION TO PLAINTIFF SUK JOON RYU'S MOTION TO STRIKE ITS ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

---

**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500 (phone)
(212) 878-8600 (fax)

150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540 (phone)
(609) 228-5318 (fax)

*Attorneys for Defendant*
*Bank of Hope*

Of Counsel and on the Brief:
Eric W. Moran, Esquire
Theodora McCormick, Esquire

On the Brief:
Lauren B. Cooper, Esquire
Maximilian Cadmus, Esquire

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................3

   I.  The Improper Allegations in Ryu's Complaint & The Bank's Carefully
      Pleaded Answer ................................................................3

      A. The Underlying Embezzlement Action ....................................3

      B. Plaintiff's Complaint in This Action ......................................5

      C. The Bank's Answer .......................................................6

ARGUMENT ...............................................................................7

   I.  RYU'S MOTION TO STRIKE SHOULD BE DENIED AS A
      DILATORY LITIGATION TACTIC AND BECAUSE THERE IS NO
      PREJUDICE TO RYU .....................................................7

      A.    Plaintiff's Complaint Violated Rule 8(a) ...........................8

      B.    The Bank Properly Denied Ryu's Argumentative Averments by
           Referring to the Documents Referenced in the Pleading.............10

      C.    The Bank Appropriately Denied Certain Allegations Based on Lack of
           Information or Personal Knowledge ...............................18

  II.  THERE IS NO BASIS TO STRIKE THE BANK'S AFFIRMATIVE
      DEFENSES, COUNTERCLAIM, OR PRAYER FOR RELIEF ........23

  III.  RYU HAS SUFFERED NO PREJUDICE AND THE MOTION TO
      STRIKE SHOULD BE DENIED AS AN IMPROPER, DILATORY
      TACTIC.................................................................26

CONCLUSION ............................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American First Federal Inc. v. Chance & McCann, LLC*,
    2018 WL 1014164 (D.N.J. Feb. 22, 2018) .......................................................24

*Binsack v. Lackawanna Cty. Prison*,
    438 Fed. Appx. 158 (3d Cir. 2011) .....................................................................9

*Blevins v. Piatt*,
    No. ELH-15-1551, 2015 WL 7878504 (D. Md. Dec. 4, 2015) ...........................8

*Cipollone v. Liggett Group, Inc.*,
    789 F.2d 181 (3d Cir.1986) ..............................................................................23

*In re Cotter*,
    No. 08-12504 (NLW), 2011 WL 5900811 (Bankr. D.N.J. Oct. 24,
    2011) .......................................................................................................7, 16, 17

*Crawford v. Aertotek, Inc.*,
    No. 09-12932, 2010 WL 11590748 (E.D. Mich. June 23, 2010) ........................9

*Deery v. Crystal Instruments Corp.*,
    No. 13-198 WJM, 2013 WL 4517867 (D.N.J. Aug. 26, 2013) .........................25

*Dilmore v. Alion Sci & Tech. Corp.*,
    No. 11-72, 2011 WL 2690367 (W.D. Pa. July 11, 2011)...................................11

*F.T.C. v. Hope Now Modifications, LLC*,
    No. 09–1204, 2011 WL 883202 (D.N.J. Mar. 10, 2011) ..............................7, 24

*Ferraraccio v. Guardian Home and Community Services, Inc.*,
    No. 3:14-177, 2015 WL 518578 (W.D. Pa. Feb. 6, 2015) ................................11

*Great W. Life Assur. Co. v. Levithan*,
    834 F. Supp. 858 (E.D. Pa. 1993).....................................................................11

*Healthcare Corp. of America v. Data RX Management, Inc.*,
    No. 2:12-CV-2910, 2013 WL 1314736 (D.N.J. Mar. 28, 2013) .......................18

*Kirusa, Inc. v. Instagram, LLC*,
No. 1:18-CV-01460-RGA, 2018 WL 6521913 (D. Del. Dec. 12,
2018) ................................................................................................25, 26

*Kregerise v. Susquehanna Township School District*,
321 F.R.D. 121 (M.D. Pa. 2016) ...........................................................18

*Newborn Bros. Co., Inc. v. Albion Engineering Co.*,
299 F.R.D. 90 (D.N.J. 2014)....................................................................7

*Pollis v. Bd. of Chosen Freeholders*,
No. 09-3009, 2009 WL 5064634 (D.N.J. Dec. 15, 2009) ...................9

*Smith v. Director's Choice, LLP*,
No. 15-81 2016 WL 7165739 (D.N.J. July 28, 2016) ....................8, 9

## Other Authorities

Denials Based on Lack of Knowledge or Information, 5 Fed. Prac. &
Proc. Civ. § 1262 (3d ed.)....................................................................19

Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure*, § 1381 (3d ed. 2006) ..........................................................7

## Rules

Fed. R. Civ. P. 8(b)(1)(B) ...............................................................................10

Fed. R. Civ. P. 8(b)(2) .....................................................................................10

Fed. R. Civ. P. 8(b)(4).....................................................................................10

Fed. R. Civ. P. 11 ...............................................................................1, 6, 7, 27

Fed. R. Civ. P. 12(c)(2)....................................................................................25

Fed. R. Civ. P. 8(b)(5).............................................................................18, 22

Fed. R. Civ. P. 8...............................................................................8, 9, 10

Fed. R. Civ. P. 8(a)......................................................................................1, 8

Fed. R. Civ. P. 8(a)(2)......................................................................................8

Fed. R. Civ. P. 8(b) ...........................................................................*passim*

Fed. R. Civ. P. 8(d) ...........................................................................9

Fed. R. Civ. P. 12(f) ..........................................................................7, 8

# INTRODUCTION

After filing a 54-page, 215-paragraph, two-count Complaint, larded with argument, hyperbole, and self-serving misstatements of "fact," Plaintiff Suk Joon "James" Ryu ("Ryu") now seeks to strike Bank of Hope's (the "Bank") Answer, which carefully navigated Ryu's brief-like Complaint and precisely responded to his improper allegations. Ryu attacks 57 paragraphs of the Bank's Answer, claiming that certain responses must be stricken or deemed admitted because they either (1) reference documents in the record in the underlying Embezzlement Action, or (2) state that the Bank lacks knowledge and information that Plaintiff alleges is within its possession. Ryu also seeks to strike two of the Bank's affirmative defenses, its counterclaim, and portions of its prayer for relief. And Ryu doesn't stop there. Following his filing of this motion, Plaintiff put the "cart before the horse" by serving a notice pursuant to Fed. R. Civ. P. 11 seeking the very same relief on 15 of the very same paragraphs, plus another 9 paragraphs, of the Bank's responsive pleading.

Ironically, Ryu invited the Bank's responses by forsaking Rule 8(a)'s "short and plain statement" requirement, and has instead filed a Complaint so shaded by self-serving spin that the Bank was forced to deny the allegations. The Bank need not, and does not, accept Ryu's characterization of many of the documents, deposition testimony, and conversations referred to in his Complaint. The Bank has

properly admitted, denied in whole or in part, or stated that it lacks sufficient information as to Ryu's allegations, in full compliance with Rule 8(b). Even Ryu knows that the Bank's Answer is properly pled, as it closely mirrors responses that Ryu himself asserted in *his* Answer in the underlying Embezzlement Action.

It is obvious that Ryu's 35-page motion to strike isn't actually about the propriety of the Bank's Answer.  Rather, it his latest step in a strategy to entangle the Bank in costly litigation—litigation that Magistrate Judge James B. Clark stayed on September 1st pending the disposition of the Bank's summary judgment motion. Rather than accept the Court's ruling, Ryu is effectively inquiring about the factual basis for all 57 of the Bank's responses that it attacks. Ryu's tactics demonstrate precisely why motions to strike—like Ryu's malicious use of process claim in the main—are so disfavored and are routinely denied.

What's more, Ryu's motion is utterly devoid of any credible assertion of prejudice, a showing that Third Circuit requires in order to prevail.

For these reasons, and those set forth below, Ryu's Motion to Strike should be denied in full.

## FACTUAL AND PROCEDURAL BACKGROUND

I.     **The Improper Allegations in Ryu's Complaint & The Bank's Carefully Pleaded Answer**

### A. The Underlying Embezzlement Action

This is a case about case.  On March 29, 2014, the Bank filed suit against Ryu, Karen Chon and others (the "Embezzlement Action") after discovering it was the victim of a $1.5 million embezzlement. The Bank's claims against Ryu were grounded in: (i) Chon's statements directly implicating Ryu in the embezzlement; (ii) statements of other employees corroborating Chon's account; (iii) Ryu's substantial motive to participate in embezzlement, including his financial hardship, economic distress from failed personal business ventures, and substantial personal debt; (iv) Ryu's opportunity and means (as BSA Officer, COO for the Bank, and Chon's superior) to discover and carry out the fraud as Chon testified he did; and (v) Ryu's downright suspicious behavior, including creating an oversight vacuum with respect to Chon's activities, and his two private meetings with Chon in the midst of the FBI's and the Bank's investigation.  The Bank alleged, *inter alia*, that Ryu conspired in Chon's embezzlement. *See* Embezzlement Action Complaint (ECF No. 1 in 2:14-cv-1770 (KM)(JAD)) and Embezzlement Action Amended Complaint (ECF No. 92 in 2:14-cv-1770 (KM)(JAD)).

In his Answer to the Amended Complaint, Ryu responded to an allegation about a letter that Ryu received by saying "*the letter is a document that speaks for*

3

*itself and any characterization of it is denied.  Ryu denies the remaining allegations in this paragraph*," *see* Ryu's Answer to the Amended Complaint (ECF No. 96 in 2:14-cv-1770 (KM)(JAD) (emphasis added)—a response that Ryu now claims is improper.

Robust discovery in the Embezzlement Action ensued, including seven sets of interrogatories, six document requests, approximately 25,000 documents (not pages) produced, and 18 depositions, including Ryu's *three* depositions of the Bank's General Counsel. *See* Pai Declaration in Support of the Bank's Motion for Summary Judgment (ECF No. 35, Exhibit 26).  So complete was the discovery in the underlying Embezzlement Action that Ryu moved for summary judgment on the Bank's embezzlement claim, which Judge Jose L. Linares denied on March 12, 2019, finding that Chon's deposition testimony alone created genuine issues of material fact concerning Ryu's involvement in the embezzlement. *See* Judge Linares' Order and Opinion in the Embezzlement Action (ECF Nos. 282, 283 in 2:14-cv-1770 (KM)(JAD)).

Following a ruling by Judge Jed. S. Rakoff in the Southern District of New York that required the Bank to pay $1.3 million in attorney's fees and costs to Ryu, *and* advance fees going forward in defending the Embezzlement Action, the Bank determined that it's $1.6 million claim against him was no longer economically feasible, and voluntarily dismissed the Embezzlement Action as to Ryu. *See* Motion

for Voluntary Dismissal (ECF No. 285 in 2:14-cv-1770). Having just prevailed on a summary judgment motion before Judge Linares months earlier, the Bank was careful to explain the circumstances of the dismissal, and maintained in that motion that the embezzlement claims against Ryu were meritorious. *See id.* Judge Linares granted the Bank's motion to voluntarily dismiss the Embezzlement Action as to Ryu on April 11, 2019. *Id.* (ECF No. 292).

## B. Plaintiff's Complaint in This Action

On October 15, 2019, Ryu filed this action, alleging that the Embezzlement Action amounted to malicious use of process. He claims that the Bank lacked reasonable cause to institute that claim because it did not adequately investigate the embezzlement, and it should have rejected Chon's statements implicating Ryu as unreliable. Compl. ¶¶ 4-10 (ECF No. 1). As a result, Ryu claims that he suffered emotional distress and reputational damages that inhibited his inability to obtain employment. *See* Compl. ¶ 11. Ryu's breach of contract claim is similarly straightforward. It alleges that the Bank breached the parties' settlement agreement by remitting the settlement payment nine days late, resulting in "emotional harm and anguish" to Ryu. Compl. ¶¶ 212-214.

Ryu's Complaint is a minefield of argument, hyperbole, and language that often unfairly shades the meaning of documents whose contents are fixed and undisputed. Many numbered paragraphs contain multiple sentences that are so thick

with argument that it is impossible to parse out the facts. *See*, *e.g.*, Compl. ¶¶ 7, 17, 20, 59, 99, 107.  At times, a single numbered *paragraph* of the Complaint runs nearly a full *page*.  *See*, *e.g.*, Compl. ¶¶ 18, 48, 75, 90, 100, 108, 142.  Ryu also incorporated numerous documents into the Complaint; however, instead of appending them, he selectively quoted and often inaccurately summarized their contents.  *See*, *e.g.*, Compl. ¶¶ 76, 90, 107, 115-125.

## C. The Bank's Answer

In response, the Bank was careful to avoid all of the argument in Ryu's Complaint and admit only the facts. Notwithstanding, Ryu now attacks over a quarter of the Bank's responses to the Complaint, two of its affirmative defenses, its counterclaim, and portions of its prayer for relief.  Determined to further entangle the Bank in costly and unnecessary disputes, Ryu argues in a 35-page motion that the Court should (1) deem "admitted" all paragraphs of the Bank's Answer which reference documents in the Embezzlement Action, (2) deem "admitted" all paragraphs of the Bank's Answer for which it stated it lacks knowledge, and (3) strike two of the Bank's affirmative defenses, counterclaim, and a portion of its prayer for relied. But Ryu took it even further.

After filing the motion to strike, on September 9, 2020, Ryu's counsel provided notice of his Rule 11 Motion based on the Bank's "denials of allegations in the Complaint that Plaintiff contends violate Rule 11." *See* Email from Harvey,

Certification of Eric W. Moran ("Moran Cert.") Ex. B.  He also provided a copy of the motion he intends to file. *Id.*

## ARGUMENT

### I.   RYU'S MOTION TO STRIKE SHOULD BE DENIED AS A DILATORY LITIGATION TACTIC AND BECAUSE THERE IS NO PREJUDICE TO RYU.

Motions to strike under Rule 12(f)[1] generally are "highly disfavored." *Newborn Bros. Co., Inc. v. Albion Engineering Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *F.T.C. v. Hope Now Modifications, LLC*, No. 09–1204, 2011 WL 883202, *1 (D.N.J. Mar. 10, 2011) ("Because of the drastic nature of the remedy motions to strike are usually viewed with disfavor and will generally be denied")). This is because they are frequently brought by "the movant simply as a dilatory tactic." *Id.* (citing *Hope Now*, 2011 WL 883202, at *1); *see also* Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure,* § 1381 (3d ed. 2006) ("Motions to strike a defense as insufficient are not favored by federal courts because of their somewhat dilatory and often harassing character.").

Indeed, "[m]otions to strike are rather strictly considered and have often been denied even when literally within the provision of Rule 12(f) where there is no showing of prejudicial harm to the moving party." *In re Cotter*, No. 08-12504

---

[1]     Rule 12(f) provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

(NLW), 2011 WL 5900811, at *8 (Bankr. D.N.J. Oct. 24, 2011) (denying a motion to strike because no "prejudice or harm resulting from Defendants' responses."). Therefore, "when reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." *Blevins v. Piatt*, No. ELH-15-1551, 2015 WL 7878504, at *2 (D. Md. Dec. 4, 2015) (internal citation omitted). As a result, "Rule 12(f) motions ordinarily will be denied unless the matter under challenges has no possible relation to the controversy and may prejudice the other party." *Id.* (internal citation omitted).

Plaintiff cannot meet this burden, and has suffered no prejudice as a result of the Bank's Answer. To the contrary, the Bank is the prejudiced party, as it is forced to respond to Ryu's dilatory tactics and justify over 25 percent of its properly pled Answer.

## A. Plaintiff's Complaint Violated Rule 8(a)

As an initial matter, Plaintiff complains of an Answer that he invited through his improper pleading, which violates Rule 8(a)'s notice pleading requirements. The purpose of Rule 8 is "to give defendants fair notice of what the claim is and the grounds upon which it rests." *Smith v. Director's Choice, LLP*, No. 15-81 (JBS/AMD) 2016 WL 7165739, at *2 (D.N.J. July 28, 2016) (internal citations omitted). Under Rule 8(a)(2), a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citing Fed

8

R. Civ. P. 8(a)(2)). Furthermore, Rule 8(d) requires that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(d). Taken together, "Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Director's Choice,* 2016 WL 7165739, at *2 (citing *Binsack v. Lackawanna Cty. Prison*, 438 Fed. Appx. 158, 160 (3d Cir. 2011).

In light of Rule 8's requirements, "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (internal citation omitted); *see also Crawford v. Aertotek, Inc.*, 09-12932, 2010 WL 11590748, at *2 (E.D. Mich. June 23, 2010) (finding that the Complaint did not comply with Rule 8(a)(2) because "given the narrative, stream-of-consciousness, construction of plaintiff's complaint, it would be virtually impossible for defendant to parse the complaint so that it can answer each allegation with an admission, denial, or inability to admit or deny, in accordance with its own pleading obligations.").

The "unnecessary prolixity" in Ryu's Complaint made it nearly impossible for the Bank to parse fact from argument, hyperbole, and shaded descriptions of documents. But rather than move to strike or dismiss the Complaint on that basis, which the Bank could have done under the Rules,[2] the Bank complied with Rule 8(b)

---

[2] *See*, *e.g.*, *Director's Choice*, 2016 WL 7165739, at *2 ("A court may dismiss a complaint that contains unnecessary factual detail as violating the 'short and plain statement' requirement of Rule 8."); *see also Pollis v. Bd. of Chosen Freeholders*,

9

and admitted, denied, or stated that it lacked information for each of Plaintiff's allegations.

### B. The Bank Properly Denied Ryu's Argumentative Averments by Referring to the Documents Referenced in the Pleading.

Ryu asserts that the following paragraphs of the Bank's Answer should be deemed admitted or stricken because they reference the very documents that he determined to make integral to the Complaint: 17, 20, 46, 49, 50, 53, 54, 76, 86, 87, 88, 89, 90, 91, 98, 99, 102, 104, 107, 115-125, 131, 133, 134, 135, 136, 137, 140, 141, 142, and 143. The Bank referred to those documents because (1) the discovery record below was robust, and the contents of referenced documents are fixed; (2) Plaintiff determined to make those documents part of the Complaint; and (3) the Bank did not agree with Plaintiff's characterization of certain documents.

Rule 8(b) requires a defendant to "admit or deny the allegations asserted against it by an opposing party." Fed R. Civ. P. 8(b)(1)(B). When `denying an allegation, the "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). The Rule also allows for partial admissions or denials. *See* Fed. R. Civ. P. 8(b)(4). The Bank complied with these requirements in crafting its

---

Civ. No. 09-3009, 2009 WL 5064634, at *2 (D.N.J. Dec. 15, 2009) (dismissing the plaintiff's amended complaint finding that it "constitutes the exact antithesis of the 'short and plain statement of the claim' required by Rule 8").

Answer, including those responses that referenced documents from the Embezzlement Action.

Contrary to Plaintiff's position, there is no *per se* bar on stating that a document "speaks for itself" in responding to allegations that mischaracterize and misrepresent the contents of a document reference. *See*, *e.g.*, *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 865 (E.D. Pa. 1993) (denying to strike or treat as admissions paragraphs in defendant's answer "which the Defendant alleges that the writings speak for themselves . . . . This Court finds that such responses are denials of the Plaintiff's characterization and representation of the writings."); *Dilmore v. Alion Sci & Tech. Corp.*, No. 11-72, 2011 WL 2690367, at *4 (W.D. Pa. July 11, 2011) (denying to strike or treat as admissions responses that "make[] clear that [defendant] disagrees with [plaintiff's] interpretation of various documents . . . . The Court does not view these answers as so clearly insufficient as to merit the relief [plaintiff] seeks."); *see also Ferraraccio v. Guardian Home and Community Services, Inc.*, No. 3:14-177, 2015 WL 518578, at *2-3 (W.D. Pa. Feb. 6, 2015) (denying a motion to strike where defendant stated "denied as stated" in response to certain allegations in the complaint).

The law permits the Bank to disagree with Plaintiff's "interpretation of the various documents." *Guardian Home and Community Servs., Inc.*, 2015 WL 518578, at *2-3 (endorsing a similar "denied as stated" response with respect to

11

characterizations of documents). Plaintiff is familiar with this concept, and has asserted the same response to allegations before this very court. *See* Ryu's Answer to the Amended Complaint in the Embezzlement Action (ECF No. 96 in 2:14-cv-1770 (KM) (JAD) ("*the letter is a document that speaks for itself and any characterization of it is denied. Ryu denies the remaining allegations in this paragraph*") (emphasis added). The Bank properly asserted that documents from the Embezzlement Action "speak for themselves" when it believed that Ryu unfairly characterized those documents.

The Bank's reference to documents was particularly appropriate because Plaintiff baked argument into so many of his allegations. For example[3], in Paragraph 17 of the Complaint, Ryu alleges that:

> Between Chon's depositions in 2016 and 2018, Ryu's counsel forced Chon to produce documents that the government had provided to her in preparation for her criminal trial. Among these documents was the Federal Bureau of Investigation ("FBI") memo showing that Chon initially told the FBI in February 2014 that Ryu had no role in her crime and that she had lied about this to the Bank at the suggestion of Bank employees. **The Bank reviewed those memos in December 2016 and yet continued its claim against Ryu based exclusively on Chon's ever-changing, unbelievable, and uncorroborated story of Ryu's involvement in her embezzlement which the FBI clearly did not credit.**

---

[3] To aid in the Court's review of this motion, the Bank has attached as Exhibit A to the Certification of Eric W. Moran a chart setting forth the relevant paragraphs of the Complaint, the Bank's corresponding response in the Answer, Ryu's basis for challenging the Bank's response, and the Bank's position with respect to Ryu's arguments. The chart does not attempt to set forth every legal basis or record citation upon which the Bank may rely for a particular averment; rather, it endeavors to furnish the Court with sufficient information to decide this motion.

Compl. ¶ 17 (emphasis added to highlight improper argument). The problems with this paragraph are myriad. Chon's implication of Ryu was not "ever-changing." She was not "unbelievable." Her statements were not "uncorroborated." And the Bank had no idea whether law enforcement credited Chon's statement or, as often occurs, determined that it did not have enough evidence to convict Ryu beyond a reasonable doubt. The Bank thus responded:

> Admitted only as to the existence and production of the FBI memorandum, which speaks for itself. The remainder of the allegations in Paragraph 17 are denied.

The parties know what the FBI reports say; the Bank can, and did, reject Ryu's selective summary of those documents, and especially his crescendo that the Bank proceeded based on "ever-changing, unbelievable, and uncorroborated" statements by Chon. Improper argument aside, Lisa Pai also testified in the Embezzlement Action that she found Chon's confession credible, and that Chon's confession was corroborated by other Bank employees, who stated that Ryu "was basically pretty desperate." *See* Motion for Summary Judgment at pp. 6-7. The Bank properly responded to paragraph 17 of the Complaint.

Another example of Ryu's improper allegations is in Paragraph 20 of the Complaint, where Ryu alleges:

> **Ever spiteful, the Bank could not resist, in one last parting shot,** to claim in its motion to terminate with prejudice its claims against Ryu that he was involved in the embezzlement: "Bank of Hope maintains that its claims

13

against Ryu have merit . . . ." **This confirms the malicious nature of the Bank's motives throughout the case. It was a gratuitous statement, and clearly intended to inflict further harm on Ryu.**

Compl. ¶ 20 (emphasis added to highlight improper argument). Ryu once again selectively quotes from the Bank's Motion for Voluntary Dismissal in the Embezzlement Action, and adds improper argument into his pleading. In response, the Bank stated:

> Admitted only that the Bank maintained in its Motion for Voluntary Dismissal that its claims against Ryu had merit. The Bank's motion to dismiss the embezzlement action speaks for itself. The remainder of the allegations in Paragraph 20 are denied.

Answer ¶ 20. The Bank properly admitted that in its Motion for Voluntary Dismissal, it asserted that its claims against Ryu had merit. The Bank also properly denied, pursuant to Rule 8(b), the remainder of the allegations, as they contain improper argument which the Bank does not accept as true. Ryu's argument that the Bank should adopt the improper argument found in this paragraph is absurd.

Paragraph 76 of Ryu's Complaint provides another example of Ryu inaccurately summarizing documents from the Embezzlement action. There, Ryu alleges:

> Pai asked Chon about unexplained transactions in Chon's accounts at the Bank, during the same time as the embezzlement, in the following amounts: $100,500; $100,000; $70,000; $60,000; $50,000; $30,000; and $27,000. Chon told Pai that these transactions were related to a "gae" or "kye," a type of rotating credit association used in Korean communities and through which, according to Pai, "a lot of people get defrauded." **Pai testified that she believed Chon that all of these large transactions were related to a gae**

14

**and were unrelated to the embezzlement, without any need to investigate further.** Chon also told Pai that she had lied to her husband about the source of funds used to pay his business debts, and claimed that it came from a gae/kye.

Compl. ¶ 76 (emphasis added to highlight improper argument). This allegation purports to characterize Ms. Pai's testimony about what she believed and then, buried in the paragraph, Ryu slips in the modifier "without any need to investigate further." *Id.*

The improper argument found in paragraph 76 is typical of the Complaint, and illustrates the kind of "gotcha" litigation that Ryu is playing, making it impossible to disentangle portions of the paragraph that accurately paraphrase the deposition transcript from those that unfairly shade it.  Accordingly, the Bank responded as follows:

> Admitted only that Pai asked Chon about certain transactions, Chon made certain statements about contributing to a "gae." To the extent that these allegations reference testimony of Lisa Pai, the deposition transcript of such testimony speaks for itself. The Bank is without information or knowledge sufficient to form a belief as to the truth of the balance of the allegations set forth in Paragraph 76, and accordingly, they are denied.

Answer ¶ 76.  The Bank rejected Ryu's characterization of Pai's testimony, and properly asserted a partial denial pursuant to Rule 8(b).

In a similar vein, in Paragraph 140 of his Complaint, Ryu alleges that:

> During her deposition on March 14, Chon claimed that all should [sic] could recall was that Ryu "forced" her to embezzle and that she gave him some money.

15

Compl. ¶ 140.  The Bank denied this allegation and indicated that "[t]he transcript of Chon's deposition speaks for itself." Answer ¶ 140.  The Bank is justified in this denial, as Ryu's claim here is another prime example of Ryu improperly shading the contents of a document—namely, the transcript of Chon's March 14, 2018 deposition. In that deposition, Chon maintained that Ryu was involved in the embezzlement, consistent with her June 23, 2016 deposition. In addition her testimony that Ryu "forced" her to embezzle funds form BankAsiana, Chon also maintained that statements she made in the earlier deposition were truthful and accurate. *See* Chon Deposition Transcript at 144:20-145:3; 151:5-9; 164:12-25; 169:8-16; 172:22-173:6 (ECF No. 34, Exhibit 4).  Accordingly, Ryu's allegation was not accurate in saying that Chon "claimed that all should [sic] could recall was that Ryu 'forced' her to embezzle and that she gave him some money." The Bank properly denied this allegation.

These are just a few examples of Ryu's improper allegations, which inaccurately summarize documents and meld these "facts" with his self-serving argument. The remainder of the allegations in which Ryu misleadingly summarizes and characterizes documents is set forth in the chart attached as Exhibit A to the Moran Cert.

The cases that Plaintiff cites for the proposition that the "document speaks for itself" is *per se* improper are distinguishable.  The *In re Cotter* case actually *denied*

16

a motion to strike for lack of prejudice to the Plaintiffs, and the same should be done here. 2011 WL 5900811, at *8 (denying a motion to strike because no "prejudice or harm resulting from Defendants' responses."). Moreover, none of those cases involve a "case-about-a-case" in which the much of the underlying evidence is fixed in deposition testimony, or a complaint that paraphrases and infuses that fixed testimony with paraphrasing, advocacy and shading the way Plaintiff does here.  In circumstances like this, where a Plaintiff determines to selectively paraphrase and shade the meaning of statements that can be objectively discerned from deposition transcripts, a defendant should be able to reject that advocacy in favor of the transcripts themselves, which Plaintiff has made part of its complaint by referring to them.  Otherwise, the parties would be left pouring over thousands of pages of deposition transcripts and quibbling over the meaning of a plaintiff's outtakes, which is the stuff of closing argument and not the short and plain averments of pleadings.

For these reasons, the Court should deny Plaintiff's motion to deem "admitted" the following paragraphs of the Bank's Answer: 17, 20, 46, 49, 50, 53, 54, 76, 86, 87, 88, 89, 90, 91, 98, 99, 102, 104, 107, 115-125, 131, 133, 134, 135, 136, 137, 140, 141, 142, and 143.

## C. The Bank Appropriately Denied Certain Allegations Based on Lack of Information or Personal Knowledge

Ryu also seeks to have the following paragraphs of the Bank's Answer deemed "admitted" because the Bank stated that it lacks knowledge in its Answer: Paragraphs 7, 52, 55, 56, 59, 60, 61, 62, 63, 66, 68, 70, 71, 72, 73, 76, and 180.  Ryu argues that "lack of knowledge" is improperly pled because the information "is clearly and obviously within [the Bank's] knowledge or readily available," Ryu's Moving Br. at 15; however, the corresponding allegations in Ryu's Complaint contain information that is peculiarly within Ryu's or another party's knowledge, not the Bank's, and are shaded by Ryu's improper argument. This is precisely why the Bank cited lack of knowledge in its Answer.

Federal Rule of Civil Procedure 8(b)(5) provides that a party that lacks knowledge or information sufficient to form a belief as to the truth of an allegation in a pleading must so state and such statement will have the effect of a denial. Fed. R. Civ. P 8(b)(5). While a party "may not deny sufficient information or knowledge with impunity," *Kregerise v. Susquehanna Township School District*, 321 F.R.D. 121, 125 (M.D. Pa. 2016), "the Federal Rules do not hold parties to a standard of omniscience." *Healthcare Corp. of America v. Data RX Management, Inc.*, No. 2:12-CV-2910, 2013 WL 1314736, at *2 n.6 (D.N.J. Mar. 28, 2013). "Where a party *legitimately answers* that it lacks knowledge or information sufficient to form a belief about a particular allegation, this will have the effect of a denial." *Id.*

18

(emphasis in original). Importantly, "if knowledge of fact cannot be ascertained within the time the party is given to answer with a *modest* expenditure of effort, a denial of knowledge or information is appropriate; the pleader is not compelled to make an exhaustive or burdensome search in order to determine the truth or falsity of his opponent's allegations." § 1262 Denials Based on Lack of Knowledge or Information, 5 Fed. Prac. & Proc. Civ. § 1262 (3d ed.) (emphasis added).

The Bank's responses that it lacked sufficient information complies with Rule 8's requirements. Many of the allegations for which the Bank stated it lacked knowledge pertained to information that is peculiarly within Ryu's or another party's knowledge, not the Bank's, and are often colored by Ryu's improper argument. Notably, the Bank filed its Answer within 14 days of the Court's denial of its Motion to Dismiss, as required under the Rules. It would have been unduly burdensome to require the Bank, in that timeframe, from parsing fact from argument in Plaintiff's 215-paragraph Complaint, and pegging each fact to a citation from one of the 18 depositions conducted in the Embezzlement Action—as Plaintiff now seems to demand.

For example, in Paragraph 7 of the Complaint, Ryu alleges:

Second, **Chon had obvious motives to lie including to protect her husband and to conceal the money she stole so she could access it later**. **The Bank made no effort to investigate these possibilities and, as noted, acted suspiciously uninterested in locating or recovering any stolen funds.**

19

Compl. ¶ 7 (emphasis added to highlight improper argument). In response, the Bank stated:

> The Bank is without information or knowledge sufficient to form a belief as to the truth of the allegations related to Chon's motives, and therefore they are deemed denied. The Bank denies the remainder of the allegations in Paragraph 7 of the Complaint.

Answer ¶ 7. The Bank's response makes clear that it is without direct knowledge of what Chon's motives were, and the Bank does not accept Ryu's assertion that her motives were to "protect her husband," which implies that her husband was complicit on the fraud.  Nor does the Bank accept Ryu's assertion that her motives included to "conceal the money she stole so she could access it later."  While Ryu might have conceived of these potential motives, the Bank does not accept Ryu's argumentative assertion that such motives were "obvious," and it rejects the statements that it made "no effort to investigate" the concepts that Ryu conceives of, that the Bank "acted suspiciously," or that it was "uninterested" in locating or recovering any stolen funds.  Accordingly, the Bank denied these allegations.

Similarly, in Paragraph 56 of the Complaint Ryu alleges:

> **Ryu later discovered** that the debit card issue was a result of the Bank's freezing of his checking account **ostensibly in response to Chon's false accusation that he conspired with her to embezzle money**.

Compl. ¶ 56 (emphasis added). The Bank denied this allegation based on insufficient knowledge. Answer ¶ 56. This allegation concerns experiences and impressions peculiarly within Ryu's knowledge. It alleges information about what Ryu

20

discovered and when he discovered it, of which the Bank does not have direct knowledge.  Nor does the Bank have direct knowledge as to what was "ostensible" to Ryu.  Notably, this allegation is independently deniable because the Bank does not admit that it acted "in response to" a "false accusation" by Chon.  The Bank acted on all the facts it had before it at the time.

The Bank's denial based on lack of information was also appropriate in response to Paragraph 59 of the Complaint, where Ryu alleges that:

> **Ryu was perplexed** as to why the Bank had not reached out to him to discuss **Chon's lies** as part of their investigation, so he called Lisa Pai ("Pai"), who was executive vice president and chief legal and human resources officer of the Bank, on or about February 10, 2014.  **Ryu knew Pai** through dealings in connection with the sale of BankAsiana to the Bank in 2013.

Compl. ¶ 59 (emphasis added). The Bank admitted only that Ryu contact Lisa Pai, but stated that it was without sufficient knowledge as to the balance of the allegations. Answer ¶ 59. This allegation, too, concerns experiences and impressions peculiarly within Ryu' knowledge.  The Bank has no way of ascertaining whether Ryu was "perplexed" at some point in time, and over what.  This allegation also assumes (a) that Chon lied multiple times and (b) that the Bank knew about certain lies in February 2014, yet Ryu does not specify the purported "lies" to which he is referring, and the Bank has no independent knowledge of what purported "lies" to which he is referring.  This allegation also purports to convey Ryu's view of how he "knew" Ms. Pai ("through dealing in connection with the sale of BankAsiana"),

21

which is an impression personal to Mr. Ryu.  The Bank therefore properly denied the allegation based on insufficient knowledge.

By way of final example, in Paragraph 180, Ryu alleges that:

> **The allegations of the Embezzlement Action** were reported in **several publications** including USA Today, and the publications **are still available online**.

Compl. ¶ 180 (emphasis added). The Bank also denied this allegation based on lack of information. This is because Ryu vaguely alleges that allegations against him were reported in "several publications."  Ryu identifies none of the publications to which he referred, except for one, nor did he say how many he contends there were. The Bank is therefore without specific knowledge to admit or deny his statement that "allegations of the Embezzlement Action were reported in several publication." Ryu also did not quote the publications that are the subject of this allegation and, without knowing the specifics or their content, the Bank is without direct knowledge to admit or deny what those purported articles said about "[t]he allegations of the Embezzlement Action."  Finally, the Bank had no independent knowledge at the time it answered as to whether none, some, or all of the articles in the unnamed publications were "still available online." In sum, the Bank properly denied the allegations based on lack of knowledge.

In sum, pursuant to Rule 8(b)(5), the Bank properly stated that it lacked information in paragraphs 7, 52, 55, 56, 59, 60, 61, 62, 63, 66, 68, 70, 71, 72, 73, 76,

and 180 of its Answer. The Court should deny Plaintiff's request that these paragraphs be deemed "admitted."

## II. THERE IS NO BASIS TO STRIKE THE BANK'S AFFIRMATIVE DEFENSES, COUNTERCLAIM, OR PRAYER FOR RELIEF.

Ryu's motion also seeks to strike with prejudice the Bank's Second and Fifth Affirmative Defenses.  The Second states that "[t]he Complaint, in whole or in part, is frivolous and cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law." The Fifth provides that "[t]he Court lacks subject matter jurisdiction over the claims asserted in the Complaint as they do not meet the jurisdictional threshold of this Court."

Ryu likewise seeks to strike with prejudice the Bank's counterclaim, arguing that it is "nothing more than a mirror image of Ryu's own claim for breach of contract." Ryu's Moving Br. at 29. Finally, Ryu seeks to strike with prejudice the following from the Bank's prayer for relief: "an order for declaratory relief, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and attorneys' fees." Ryu's Moving Br. at 31.  Ryu contends that all of this relief is improper.

The Third Circuit has instructed that a district court "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir.1986).  In evaluating the

23

adequacy of a defense, courts in this District have explained that "[a]n affirmative defense is insufficient if 'it is not recognized as a defense to the cause of action.'" *Hope*, 2011 WL 883202, at \*2.  A particularly instructive case is *American First Federal Inc. v. Chance & McCann, LLC*, 2018 WL 1014164, at \*6 (D.N.J. Feb. 22, 2018). There, Judge Kugler denied a motion to strike affirmative defenses, noting that even though "affirmative defenses two through twenty one . . . include zero facts—they are simply recitations of legal conclusions—this Court will not strike them . . . Plaintiff appears to suffer no prejudice from these affirmative defenses. The defenses, as plead, may look meritless—but Plaintiff has not presented evidence that it suffers as a result of their assertion." *Id.*

Unlike the 21 defenses that Judge Kugler refused to strike in *McCann,* these defenses are not "meritless."  Indeed, the Bank properly pled that the Court lacks subject matter jurisdiction, which the Bank believes to be true in light of its understanding of Plaintiff's damages, particularly as regards Count II. Importantly, lack of subject matter jurisdiction can be raised at any time, including *sua sponte* by the Court. The Bank's other defense, stating that the Bank is not supported by fact or law, is a standard defense that essentially states what the Bank has set forth in both its Motion to Dismiss and Motion for Summary Judgment. Plaintiff suffers no prejudice by the presence of these defenses and his request to strike them should be denied.

24

The Bank's counterclaim is far from a "mirror image" of Ryu's Count II, as he argues it is. The Bank's counterclaim states a different claim, based on different facts and different law, and seeks different relief. There is no basis to strike it. Even if the Bank's counterclaim was more properly asserted as an affirmative defense, "the court must, if justice so requires, treat the pleading as though it were corrected designates." Fed R. Civ. P. 12(c)(2). The Bank's declaratory judgment count is proper, and Plaintiff is merely seeking to delay this matter by refusing to answer.

The Bank's Prayer for Relief, too, is properly pled. Even if there were no express authorization by statute or otherwise to obtain legal fees, the Bank is permitted to preserve this relief in its pleading. *See Deery v. Crystal Instruments Corp.*, No. 13-198 WJM, 2013 WL 4517867, at *2 (D.N.J. Aug. 26, 2013) (denying to strike the request for attorney's fees on a similar basis). Indeed, courts "have a great deal of flexibility when fashioning . . . relief for aggrieved parties." *Kirusa, Inc. v. Instagram, LLC*, No. 1:18-CV-01460-RGA, 2018 WL 6521913, at *1 (D. Del. Dec. 12, 2018). Recognizing this, the Bank "chose to preserve a broad range of potential remedies by requesting relief which, depending on the facts, [the Court] could perhaps grant." *Id.* Here, Plaintiff "does not cite authority that limits [the Court's] flexibility or precludes [the Court] from granting" the Bank's "requested relief in the circumstance." *Id.* Accordingly, Plaintiff's request that the Bank's

25

prayer for relief be stricken should be denied. *See id.* (denying a motion to strike a prayer for relief).

### III.  RYU HAS SUFFERED NO PREJUDICE AND THE MOTION TO STRIKE SHOULD BE DENIED AS AN IMPROPER, DILATORY TACTIC.

The lack of any prejudice to Ryu is clear.  Ryu was party to the underlying Embezzlement Action, and his same attorney took almost all of the 18 depositions conducted there.  Nothing about the Bank's Answer in this case affects Ryu's ability to marshal the robust discovery taken there.  To the extent the Answer references documents in its denials, the contents of those documents are fixed, known to all, and in Ryu's possession.   To the extent his allegations involve his peculiar knowledge, or that of a third-party, Ryu can testify to such facts and had a full and fair chance to depose such third-parties in the underlying Embezzlement Action, where the core focus was the quantity and quality of the evidence underlying the Embezzlement Action.  Ryu's access to that robust discovery, some of which he referred to in the Complaint, shows that nothing about the Bank's Answer visits harm upon him.  His wish that the Bank concede his version of events is not enough to show prejudice.

Rather, the breadth of Ryu's motion and the picayune nature of his objections make clear that his intention is to entangle the Bank in needless litigation.  Ryu's scorched earth litigation strategy has only escalated since the Court's September 1

order staying discovery in this matter pending disposition of the Bank's motion for summary judgment.[4] Since the stay order, Plaintiff has lodged the Rule 11 notice, pursued (and continues to pursue) a baseless accusation of potential ethical violations, and a filed a meritless appeal to overturn the Magistrate Judge's discretion in entering the stay.  This motion to assail 57 of the Bank's responses to Ryu's Complaint, its affirmative defenses, and its counterclaim is but another effort to foment unnecessary litigation, and should be denied.

---

[4]      Magistrate Judge James B. Clark entered the stay order after  a hearing in which Ryu said he expected he had "98 percent of the documents in this case," Tr. 20:20-21, ECF No. 41, and in the Bank's view articulated no other documents that actually were needed to address the pending summary judgment motion.  The Court appeared to agree.  Tr. 25:23-26:1 ("[W]e're spinning our wheels right now, and we're getting involved in quagmires that are going to make this case last for the rest of mine and your lives.").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff's Motion to Strike should be denied

in full.

By:     /s/ ERIC W. MORAN
Eric W. Moran, Esquire
Theodora McCormick, Esquire
**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500 (phone)
(212) 878-8600 (fax)

150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540 (phone)
(609) 228-5318 (fax)

*Attorneys for Defendant*
*Bank of Hope*

Date: September 21, 2020