# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

SUK JOON RYU, a/k/a James S. Ryu

                    Plaintiff,

       v.

BANK OF HOPE,

                    Defendant.

Civil Action No.: 2:19-18998 (KM)(JBC)

*Document Electronically Filed*

---

## BANK OF HOPE'S BRIEF IN OPPOSITION TO PLAINTIFF SUK JOON RYU'S RULE 11 MOTION TO DEEM ADMITTED ALLEGATIONS IN THE COMPLAINT

---

**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500 (phone)
(212) 878-8600 (fax)

150 College Road West, Suite 301
Princeton, New Jersey 08540
(609) 455-1540 (phone)
(609) 228-5318 (fax)

*Attorneys for Defendant*
*Bank of Hope*

Of Counsel and on the Brief:
Eric W. Moran, Esquire
Theodora McCormick, Esquire

On the Brief:
Maximilian Cadmus, Esquire

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................................ii

INTRODUCTION ........................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................3

ARGUMENT.............................................................................................8

   I.   PLAINTIFF'S RULE 11 MOTION SHOULD NOT BE CONSIDERED
      BY THE COURT BECAUSE IT IS PROCEDURALLY DEFECTIVE ......8

   II.  PLAINTIFF'S MOTION IS AN ABUSE OF RULE 11, AND PRECISELY
      THE TYPE OF "HARDBALL" LITIGATION TACTIC AGAINST
      WHICH THE THIRD CIRCUIT HAS WARNED LITIGANTS.................9

   III. THE BANK'S ANSWERS WERE REASONABLE UNDER THE
      CIRCUMSTANCES, AND DO NOT WARRANT THE IMPOSITION OF
      SANCTIONS UNDER RULE 11 ...............................................................12

      A.  The Complaint Violated Rule 8 .........................................................13

      B.  The Bank's Answer Complied with Rule 8 and Rule 11 ....................15

CONCLUSION .......................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bender v. Jordan*,
 679 F. Supp. 2d 85 (D.D.C. 2010)..........................................................16, 17, 18

*Binsack v. Lackawanna Cty. Prison*,
 438 Fed. Appx. 158 (3d Cir. 2011) ..................................................................13

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
 498 U.S. 533, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991) ....................................1

*In re Cotter v. Skylands Community Bank, et al.*,
 No. 08-12504 (NLW), 2011 WL 5900811 (Bankr. D.N.J. Oct. 24,
 2011)......................................................................................................................11

*Crawford v. Aertotek, Inc.*,
 09-12932, 2010 WL 11590748 (E.D. Mich. June 23, 2010)..............................13

*Doering v. Union County Bd. of Chosen Freeholders*,
 857 F.2d 191 (3d Cir.1988) ..............................................................................12

*Dura Sys., Inc. v. Rothbury Investments, Ltd.*,
 886 F.2d 551 (3d Cir. 1989) ..............................................................................11

*Evident Corp. v. Church & Dwight Co.*,
 97-CV-3275, 2002 WL 31553831 (D.N.J. Sept. 20, 2002), aff'd, 78
 Fed. Appx. 113 (Fed. Cir. 2003) ........................................................................8

*Ferraraccio v. Guardian Home and Community Services, Inc.*,
 No. 3:14-177, 2015 WL 518578 (W.D. Pa. Feb. 6, 2015) .................7, 16, 30, 31

*Gaiardo v. Ethyl Corp.*,
 835 F.2d 479 (3d Cir. 1987) ..........................................................................9, 12

*Garr v. U.S. Healthcare, Inc.*,
 22 F.3d 1274 (3d Cir. 1994) ..............................................................................15

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*,
 590 F. Supp. 2d 677 (D.N.J. 2008)....................................................................12

*Lieb v. Topstone Indus.*,
  788 F.2d 151 (3d Cir.1986) ..................................................................12

*Newborn Bros. Co., Inc. v. Albion Engineering Co.*,
  299 F.R.D. 90 (D.N.J. 2014) ...............................................................11

*Oswell v. Morgan Stanley Dean Witter & Co.*,
  507 F. Supp. 2d 484 (D.N.J. 2007)......................................................12

*Smith v. Director's Choice*,
  LLP, No. 15-81 2016 WL 7165739 (D.N.J. July 28, 2016)...............13

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*,
  315 F. Supp. 2d 623 (D.N.J. 2004)................................................9, 10

## Other Authorities

5A Charles A. Wright & Arthur R. Miller, Federal Practice and
  Procedure (3d ed.2004) ...............................................10, 14, 15, 31

## Rules

Fed R. Civ. P. 8
  ................................................................................................*passim*

Fed R. Civ. P. 11
  ................................................................................................*passim*

Fed R. Civ. P. 12
  ...............................................................................................8, 11

Fed R. Civ. P. 56
  ...............................................................................................7, 38

L. Civ. R. 7.1
  .................................................................................................2, 8

L. Civ. R. 12.1
  ...................................................................................................11

L. Civ. R. 16.1
  .................................................................................................1, 8

L. Civ. R. 37.1

.............................................................................................................................11

# INTRODUCTION

Plaintiff Suk Joon Ryu's Rule 11 Motion to strike twenty-three paragraphs of Bank of Hope's (the "Bank's") Answer, and deem those paragraphs of the Complaint admitted, should be denied with prejudice.

As an initial matter, Ryu's Rule 11 Motion was filed without prior leave of Court, in violation of this Court's Standing Order issued pursuant to Rule 16.1.  The Standing Order states "[n]o motions excepting those required by the Federal Rules of Civil Procedure . . . shall be filed without prior leave of Court." ECF No. 32. Thus, Plaintiff's motion should not even be considered by the Court at this time.

Turning to the merits of Plaintiff's motion, Plaintiff has failed to demonstrate that the Bank's Answer violated Rule 11.

The governing principle under Rule 11 is "reasonableness *under the circumstances*." *See Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 551, 111 S. Ct. 922, 933, 112 L. Ed. 2d 1140 (1991) (emphasis in original) (quoting Advisory Committee's Note to Fed. R. Civ. Proc. 11, 28 U.S.C. App., p. 576).

In this case, Plaintiff determined to ignore Rule 8(a)'s "short and plain statement" requirement, and instead to lard his 54-page, 215-paragraph Complaint with argument, hyperbole, and self-serving misstatements of fact. Many paragraphs of the Complaint are several sentences long, with various characterizations,

impressions, or opinions baked into them. Other paragraphs offer shaded or inaccurate accounts of transcribed witness testimony. Still other paragraphs make assertions that are downright false. Under these circumstances, neither Rule 8(b) nor Rule 11 require an answering party to wade through line after line of argument in each lengthy paragraph to parse a single kernel of fact that can be admitted. This would essentially require an answering party to play the role of editor, and rewrite each sentence of the Complaint to eliminate the baked-in descriptions, characterizations, suggestions, associations, and misstatements. In short, it would be *unreasonable under the circumstances*.

Plaintiff's Rule 11 Motion is yet another example of "hardball" litigation from the Plaintiff.[1]  Its primary purpose is to harass the Bank, and cause further legal expense, *not* to prove Plaintiff's claims. The Court should not countenance these strategies, and should deny Plaintiff's motion for Rule 11 sanctions.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As the Court is no doubt aware of the factual and procedural history from the motions now pending before this Court, the Bank will focus only on the facts and procedural history relevant to this motion.

On September 3, 2020, just two days after Judge Clark stayed discovery in this case, Plaintiff's counsel called the undersigned and informed that he intended to file a motion to strike the Answer and serve a Rule 11 notice based on certain

responses in the Answer.  Upon learning of Plaintiff's intent to file a sanctions motion, the undersigned asked counsel to furnish what he believed was wrong with the Answer so that the Bank could assess those claims. *See* September 3, 2020 Email Chain (Moran Cert. Exs. A and B).[2]

The next day, on September 4, 2020, Plaintiff filed his motion to strike 57 paragraphs of the Bank's Answer.  Five days later, on September 9, 2020, Plaintiff served a Rule 11 notice upon the Bank. The Rule 11 notice alleged that 35 paragraphs of the Bank's Answer were sanctionable, and sought to have those paragraphs deemed admitted.  *See* September 9, 2020 Rule 11 Notice (Moran Cert. Ex. C).  Between his motion to strike and his Rule 11 Motion, Plaintiff assailed 77 separate paragraphs of the Bank's Answer, with 14 paragraphs appearing in both motions.

The Bank responded on September 25, 2020 with a letter stating that Plaintiff's invocation of Rule 11 was a continuation of his strategy of harassment, and a transparent attempt to circumvent the Court's September 1, 2020 Order staying discovery, and requested Plaintiff withdraw the notice. *See* September 25, 2020 Letter to Plaintiff Counsel (Moran Cert. Ex. D). Among the procedural and substantive defects pointed out in the Bank's September 25, 2020 Letter was Plaintiff's "cart-before-the-horse" strategy of moving to strike 14 of the very same

paragraphs as his Rule 11 notice without prior notice, and his failure to meet-and-confer.

On October 7, 2020, the parties finally conferred regarding the Rule 11 notice over Zoom video conference. By then, the Bank had filed its opposition to the motion to strike, which included a chart that explained the Bank's basis for each of the seventy-seven paragraphs that Plaintiff assailed in his Motion to Strike and companion Rule 11 notice. *See* Chart titled "Defendant's Responses to Plaintiff's Motion to Strike and Rule 11 Notice (ECF No 48-2). The Bank furnished the detailed explanations in the chart, complete with citations to the record, to address or at least narrow some of Plaintiff's purported concerns, and open the door for a compromise and forego needless motion practice.[3] This hope was misplaced.

The Plaintiff *categorically rejected* every one of the explanations put forward for all 77 paragraphs. Even more tellingly, Plaintiff's counsel stated during the meet-and-confer that Plaintiff was not about to "walk away" from the Rule 11 Motion because of the "strategic" advantage that the Plaintiff would enjoy by telling the Court and a jury that "this is how the Bank pleads."[4]

The meet-and-confer was not recorded, but on October 9, 2020, the Bank sent a follow-up letter memorializing the exchange.[5] In it, the Bank addressed Plaintiff's so-called "strategy" as an improper basis to invoke Rule 11. *See* October 9, 2020 Letter to plaintiff Counsel (Moran Cert. Ex. E). The Bank also urged the avoidance

of further costly litigation. *Id.* The Bank offered to consider amending eleven paragraphs of the Answer to provide additional details, if that would mean no more unnecessary motion practice:

> The Bank's Answer properly and fairly apprises Plaintiff of its position. Even despite Plaintiff's admittedly "strategic" use of Rule 11, however, if Plaintiff is willing to forego that unnecessary, baseless, and (as is now apparent) ill-motivated motion, the Bank would consider making certain amendments to its pleading. Though amendment is unnecessary, the Bank makes this offer to avoid further unnecessary litigation.
>
> For example, Plaintiff seems fixated on the Bank's admission to Paragraph 26 of the Complaint that the Bank is "a bank." This was the only specific example cited during our meet-and-confer. We are aware of no FDIC designation for "Korean American bank," and as you know the Bank's customers include non-Korean Americans. While the Bank's response was proper, the Bank would be willing to admit that it markets itself as a Korean American bank, that it serves the Korean-American community, or even as Ms. Pai testified, that it is "Korean American focused," if it would avoid the motion you have threatened to file.
>
> *Id.* at 2.

The Bank stood by its responses to Paragraphs 48, 75-78, and 81 of the Complaint (*i.e.*, paragraphs where the Complaint paraphrased documents); however, it offered to "quote the underlying documents that the Complaint purports to characterize," thereby "effectively treat[ing] the Answer as a response to Statement of Material Fact under Rule 56." *Id.* Although this offer was unnecessary and would have effectively turned a Rule 8 pleading into a Rule 56 pleading, as the Bank

pointed out, it extended the offer nonetheless to try and avoid this unnecessary motion practice. *Id.*

Likewise, as to Paragraphs 60, 62, 66, and 162 (*i.e.*, paragraphs in which Plaintiff attempted to effectively transcribe in-person conversations), the Bank offered to use the commonly-used phrase "denied as stated[,]" which has been endorsed by at least one court of this Circuit. *See Ferraraccio v. Guardian Home and Community Services, Inc.*, No. 3:14-177, 2015 WL 518578, at *2-3 (W.D. Pa. Feb. 6, 2015) (denying a motion to strike where defendant stated "denied as stated" in response to certain allegations in the complaint).

The Bank maintained that its Answer was appropriate in all regards, but offered these points of compromise to avoid unnecessary litigation. On October 21, 2020, Plaintiff responded that all but one[6] of the Bank's explanations and offers to compromise were unacceptable and that he would be filing the instant Rule 11 Motion, which he did on November 11, 2020.

## **ARGUMENT**

### I.    **PLAINTIFF'S RULE 11 MOTION SHOULD NOT BE CONSIDERED BY THE COURT BECAUSE IT IS PROCEDURALLY DEFECTIVE.**

Plaintiff's motion is procedurally defective because it was filed without leave of court, in violation of the Court's Standing Order**.** The Court's Standing Order, issued pursuant to Rule 16.1, states "[n]o motions excepting those required by the

Federal Rules of Civil Procedure as, for example, listed in Rule 12(b), shall be filed without prior leave of Court." ECF No. 32. Ryu's Rule 11 Motion is procedurally defective because he failed to obtain leave of Court as required by the Standing Order. Local Civil Rule 7.1(a)(b)(1) permits District Court Judges and Magistrate Judges to establish procedures for presenting and defending motions brought before them. A violation of those procedures can be grounds for denial. *See Evident Corp. v. Church & Dwight Co.*, 97-CV-3275, 2002 WL 31553831, at *10 (D.N.J. Sept. 20, 2002), aff'd, 78 Fed. Appx. 113 (Fed. Cir. 2003) (citing plaintiffs' failure "to properly seek this relief according to the procedural rules of this Court" among the reasons for denial).

Worse, Ryu's failure to follow the procedures established by this Court for motion practice is no mere oversight. On September 16, 2020 the undersigned counsel filed and served a letter raising the fact that Ryu had neither sought—nor obtained—leave of Court to file his threatened Rule 11 Motion. *See* ECF. No. 44. Yet still, Ryu flouted the Standing Order. The reason is obvious: Plaintiff's goal is to harass the Bank with further expensive motion practice. That, he has already accomplished by necessitating yet another detailed opposition from the Bank.

## II.   PLAINTIFF'S MOTION IS AN ABUSE OF RULE 11, AND PRECISELY THE TYPE OF "HARDBALL" LITIGATION TACTIC AGAINST WHICH THE THIRD CIRCUIT HAS WARNED LITIGANTS.

Rule 11 sanctions are reserved for "exceptional circumstances." *See Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 627–28 (D.N.J. 2004). And the unmerited invocation of this Rule has long been a matter of concern for courts.

In *Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir. 1987), Third Circuit Judge Joseph F. Weis, Jr. (who served as Chairman of the Standing Committee on Rules of Practice and Procedure) gave the following warning about Rule 11:

> The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.
>
> *Id.* at 485.

Judge Weis went on to note that "[a] court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose." *Id.*

Ryu's invocation of Rule 11 is merely the latest episode in a course of vexatious "hardball" litigation targeted at wasting the Defendant's resources and circumventing the Court's order staying discovery pending resolution of the Bank's motion for summary judgment.

Unsatisfied with the Court's decision, Plaintiff's counsel has launched a barrage of motions and applications intended to harass the Bank, and obtain discovery through other means. This is an improper use of Rule 11. *See, e.g.*, *Wartsila*, *supra*, 315 F. Supp. 2d at 627–28 (D.N.J. 2004) ("A [Rule 11] motion

should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.").

One need look no further than the timing of Plaintiff's Rule 11 Motion to see that it is an attempted end-run around the Court's order staying discovery. Plaintiff's Rule 11 Motion came on the heels of Plaintiff's companion Motion to Strike, in which Plaintiff seeks identical relief as to Paragraphs 50, 59, 68, 70, 72, 73, and 76.[7] To move for identical relief in two separate motions both pending before the Court at the same time serves no recognizable purpose except to waste time and harass. Worse, by separately moving on these paragraphs, Plaintiff has done an end-run around the formal notice and conference process required by Rule 11 and Local Civil Rules 12.1(g)(1) and 37.1(b)(1).

In opposing Plaintiff's companion Motion to Strike, the Bank pointed out that such motions are "highly disfavored" because they are frequently brought by "the movant simply as a dilatory tactic." *See Newborn Bros. Co., Inc. v. Albion Engineering Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *Hope Now*, 2011 WL 883202, at *1); *see also* Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure,* § 1381 (3d ed. 2006) ("Motions to strike a defense as insufficient are not favored by federal courts because of their somewhat dilatory and often harassing character.").

9

Indeed, "[m]otions to strike are rather strictly considered and have often been denied even when literally within the provision of Rule 12(f) where there is no showing of prejudicial harm to the moving party." *In re Cotter v. Skylands Community Bank, et al.*, No. 08-12504 (NLW), 2011 WL 5900811, at *8 (Bankr. D.N.J. Oct. 24, 2011) (denying a motion to strike because no "prejudice or harm resulting from Defendants' responses."). These cases apply with equal force to Plaintiff's Rule 11 Motion, which is a companion to, and serves the same dilatory and harassing purpose as, his Motion to Strike.

### III.   THE BANK'S ANSWERS WERE REASONABLE UNDER THE CIRCUMSTANCES, AND DO NOT WARRANT THE IMPOSITION OF SANCTIONS UNDER RULE 11.

Rule 11 sanctions should only be imposed "in the exceptional circumstance" where a party's submissions to the Court are "patently unmeritorious or frivolous." *Dura Sys., Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988). "[W]hen issues are close, the invocation of Rule 11 borders on the abusive . . . ." *Gaiardo*, *supra*, 835 F.2d at 483.

The Rule "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 693 (D.N.J. 2008) (quoting *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d

10

Cir.1986)). "It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation." *Gaiardo*, supra, 835 F.2d at 482. "[T]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is *reasonableness under the circumstances*." *Oswell v. Morgan Stanley Dean Witter & Co.*, 507 F. Supp. 2d 484, 488 (D.N.J. 2007) (emphasis added).

The Bank's Answer was wholly appropriate, fairly apprised Plaintiff of its position with respect to Plaintiff's claims, and certainly was "reasonable under the circumstances" of confronting a Complaint that violated Rule 8's pleading standards. The only "extraordinary circumstance" here is Plaintiff's extraordinarily argumentative Complaint, and his subsequent extraordinary abuse of Rules 11 and 12(f) to harass the Defendant and circumvent Court orders.

### A. The Complaint Violated Rule 8.

Under Rule 8(a)(2), a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Furthermore, Rule 8(d) requires that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(d). Taken together, "Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Smith v. Director's Choice,* LLP, No. 15-81 (JBS/AMD) 2016 WL 7165739,

at *2 (D.N.J. July 28, 2016) (citing *Binsack v. Lackawanna Cty. Prison*, 438 Fed. Appx. 158, 160 (3d Cir. 2011).

"Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (internal citation omitted); *see also Crawford v. Aertotek, Inc.*, 09-12932, 2010 WL 11590748, at *2 (E.D. Mich. June 23, 2010) (finding that the Complaint did not comply with Rule 8(a)(2) because "given the narrative, stream-of-consciousness, construction of plaintiff's complaint, it would be virtually impossible for defendant to parse the complaint so that it can answer each allegation with an admission, denial, or inability to admit or deny, in accordance with its own pleading obligations.").

Eschewing the requirements of Rule 8, Plaintiff chose to file a 54-page, 215-paragraph Complaint, larded with argument, hyperbole, and self-serving misstatements of fact.[8]

Of course, Plaintiff has not placed the most egregious paragraphs of his Complaint before the court, but the Bank was forced to respond to each and every one of 215, argumentative, hyperbolic, and self-serving paragraphs of the Complaint.

Under these circumstances, neither Rule 8(b) nor Rule 11, nor any other rule requires an answering party to separately admit any tiny sentence fragment–any

kernel of fact–capable of admission, no matter how minor or inconsequential. Nor do the Rules require the answering party to rewrite factual assertions that are couched in argumentative language or shaded by an incomplete and misleading recitation of the facts. To expect this would be "unreasonable under the circumstances." *See*, *e.g.*, § 1262 "Denials Based on Lack of Knowledge or Information," 5 Fed. Prac. & Proc. Civ. § 1262 (3d ed.) ("[I]f knowledge of fact cannot be ascertained within the time the party is given to answer with a *modest* expenditure of effort, a denial of knowledge or information is appropriate[,]" and "the pleader is not compelled to make an exhaustive or burdensome search in order to determine the truth or falsity of his opponent's allegations.") (emphasis added).

Plaintiff cites *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994), and contends that the Bank's Answer should be held to a higher standard because the Bank had ample time to make whatever factual or legal inquiries were necessary to answer the Complaint. This argument misses the point.

The Bank does not contend—and has never contended—that it had insufficient time to investigate the allegations of the Complaint. On the contrary, the Bank affirms that it had ample time to investigate matters prior to filing and serving its Answer, *and* the Bank did so. Instead, the Bank contends that it was not required to play the part of editor, and rewrite the Complaint from the Bank's viewpoint. Instead, it fairly responded to the allegations therein, consistent with Rule 8.

13

### B.  The Bank's Answer Complied with Rule 8 and Rule 11.

Rule 8(b) requires a defendant to "admit or deny the allegations asserted against it by an opposing party." Fed R. Civ. P. 8(b)(1)(B). When denying an allegation, the "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). The Rule also allows for partial admissions or denials. *See* Fed. R. Civ. P. 8(b)(4).

"Together, Rule 8(b) and 8(d) require that a defendant's responsive pleading make the plaintiff aware of the 'allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail.'" *Ferraraccio*, 2015 WL 518578, at *4 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.2004)). "As with complaints, 'plain notice' of the issues raised by the defendants is all that is required under the federal rules." *Id.*

The Bank complied with these requirements in crafting its Answer. The Answer fairly responded to the substance of the allegations contained in the Complaint. Likewise, Plaintiff was provided with "plain notice" of which *material* facts were admitted, and which would have to be proved.

Plaintiff analogizes this case to *Bender v. Jordan*, 679 F. Supp. 2d 85, 98 (D.D.C. 2010), in which two dissident shareholders filed a lawsuit against five members of a bank's board of directors for violations of the Securities Exchange Act

of 1934. In that case, the District Court for the District of Columbia found that five paragraphs of an Answer violated Rule 11. But the facts in this case are strikingly different from those in *Bender* for at least three reasons.

First, in *Bender* the Court found that the Defendants flatly denied events and statements that went to the *substance* of the Complaint, and should have been admitted. *Id.* at 98 ("Out of the eighteen Answers the Benders challenge, the Court has found that nine were false. The Court further finds that five constitute significant violations of Rule 11(b). ***Those five went to the heart of the matter***[.]") (emphasis added).

In this case, by contrast, the Bank has correctly responded to the *substance* of the Complaint in accordance with both Rule 8 and Rule 11. Unlike the answers in *Bender*, which went to the "heart of the matter," the Plaintiff in this case has only presented the Court with quibbles (such as whether the Bank is a "Korean American bank" versus a "Korean American *focused* bank") or immaterial allegations of fact (such as whether the Bank should have separately admitted that an employee flew to New Jersey, or the undisputed date of a meeting).

Second, *Bender* was a typical case, in that the pleadings were filed *before* the bulk of discovery was complete. This case, by contrast, is unusual because it is a "case about a case" and therefore a significant amount of discovery has already been completed. This is no small difference.

In *Bender*, the Court found that "Once these denials were advanced, the Benders were put to significant expense to prove that the denials were unwarranted and without any evidentiary support." *Id.* at 98. In this case, both parties are in full possession of the record from the underlying Embezzlement suit. There is no possibility of being misled or misinformed, since both parties have access to the record. The Bank's refusal to adopt Plaintiff's often charged and argumentative assertions *as written* is not sanctionable. Nor can the Bank be sanctioned for having a different reading of a document whose authenticity is not in dispute, or remembering differently an unrecorded conversation.

Finally, in *Bender* there was no allegation that the Complaint violated Rule 8's "short and plain statement" requirement by including improper argument, characterizations, and shading. In fact, compared to the Complaint filed by Plaintiff in this case, the Complaint in *Bender* was relatively unencumbered by unnecessary and improper arguments, shading, and characterization. *Id.*

Under the circumstances of this case, the Bank's Answers to all 23 paragraphs raised in Plaintiff's Rule 11 Motion fully complied with the requirements of both Rule 8 and Rule 11.

**Paragraph 9**

Paragraph No. 9 of the Complaint asserts:

> Fourth, after initially acting as if she were cooperating with the Bank, Chon hired a lawyer and refused to

16

cooperate. In contrast, Ryu met with the Bank and its counsel, answered all questions, and offered to make himself available as much as needed, without the assistance of any lawyer.

Complaint ¶ 9 (ECF No. 1).

The Bank properly denied this paragraph in its entirety. First, Paragraph 9 comes in the context of, and is a continuation of, the assertions made in paragraph 6, which begins by arguing "[t]here were several large problems with Chon's tale and the Bank's ostensible reliance on it. First . . . ." That prefatory argument modifies the five numbered paragraphs that follow, including paragraphs 9 and 10. Obviously, the Bank is under no obligation to, and does not, adopt Plaintiff's characterization of "large problems with Chon's tale," nor of the Bank's "ostensible" reliance on Chon's statements.

The Bank rejects the argumentative assertions that Chon "initially act[ed] as if she were cooperating," suggesting that she initially feigned cooperation. Moreover, the Bank rejects the assertion that Chon "refused to cooperate" after obtaining counsel in connection with her pending criminal charges. In fact, the Bank's General Counsel flatly denied this characterization during her deposition. *See* July 13, 2017 Deposition of Lisa Pai at 152:21-153:4 (Moran Cert. Ex. G) ("Q. Your recollection, she refused to cooperate with you, you met with her once and after that, she refused to cooperate with you, right? A. No, because she said she wasn't available.").

Indeed, Plaintiff's allegation that Chon "hired a lawyer and refused to cooperate" rings especially hollow when one considers that Ryu secretly recorded himself urging Chon to retain a lawyer, and even offered to arrange for her to meet a lawyer. *See* "Ryu and Chon Meeting transcription" at JR000518 (Moran Cert. Ex. I) ("Karen may need it [*i.e.,* a lawyer]. So there are a few people that were found. There are one person in Manhattan who is Korean and involved in these white collar stuff, and there are two people who were recommended by my regulatory counselor. I will arrange a meeting for you. You have to see someone initially any way, now.").

## **Paragraph 10**

Paragraph 10 of the Complaint asserts:

> Fifth, the Bank knew that Chon had worked for another predecessor of the Bank and had left her employment under suspicion of embezzlement. In other words, the Bank ostensibly accepted the word of a person who admitted embezzling all of the money at issue and who was suspected of embezzlement on a prior occasion.

> Complaint ¶ 10 (ECF No. 1).

The Bank properly denied this paragraph in its entirety. Like Paragraph 9, Paragraph 10 is a continuation of a list "several large problems with Chon's tale and the Bank's ostensible reliance on it." Paragraph 10 continues the argument by stating "the Bank ostensibly accepted the word of a person who admitted embezzling all of the money at issue and who was suspected of embezzlement on a prior occasion." This oversimplifies the facts to the point of mischaracterizing them. At this point in

the litigation, it should be clear that the Bank did not just accept Chon's word, it made decisions based on the totality of circumstances surrounding the investigation, including all of the corroborating facts.

Finally, the first sentence is contradicted by Ryu's own deposition testimony. In his capacity as the Bank's COO and Chief Compliance Officer, Ryu and former CEO H.S. Hur inquired into Chon's history at Liberty Bank, and found no cause for concern. Ryu testified that it would have been "nonsensical" to pay any mind to the allegations. *See* June 14, 2018 Deposition of James Ryu at 289:4-295:11 (Moran Cert. Ex. I). The Bank properly denied this argumentative paragraph.

## **Paragraph 16**

Paragraph 16 of the Complaint asserts:

> Ryu's counsel had only a brief chance to question Chon at that deposition, and sought to depose her on another day, but Chon refused. She evaded court orders requiring her to sit for a further deposition for almost two more years, before she pleaded guilty to embezzlement, and went to prison. Ryu's counsel got a court order requiring her to appear for her deposition in prison in March 2018.

> Complaint ¶ 16 (ECF No. 1).

The Bank properly admitted "only that Ryu obtained a Court Order on February 26, 2018 related to Chon's deposition[,]" and denied the remainder of Paragraph 16.

The Bank is under no obligation to accept Ryu's argumentative shading of the facts in paragraph 16, that Ryu's counsel had a "brief" chance to question Chon, or that Chon "evaded" court orders requiring her deposition. Nor should the Bank opine as to whether Chon was being "eva[sive]," was following the advice of the lawyer that Ryu urged her to retain, or was awaiting a court order to sit for a second deposition (which the Bank admitted was forthcoming). It was appropriate for the Bank to admit the facts that were true without adopting Ryu's charged characterizations in the process.

**Paragraph 26**

Paragraph 26 of the Complaint asserts:

> The Bank is a Korean American bank, which means that most of its customer base, employees, and leadership is Korean American and it markets its banking products and services primarily but not exclusively to Korean Americans.

Complaint ¶ 26 (ECF No. 1).

Ryu's inclusion of Paragraph 26 underscores the absurdity of Ryu's Rule 11 Motion. As an initial matter, the term "Korean American bank" appears to be a colloquial term, rather than an official regulatory designation. One cannot prove that a bank is a "Korean American Bank" in the same way one can "prove" an entity is a corporation, or an FDIC-insured institution.

Bank of Hope "serves a multi-ethnic population of customers through 58 full-service branches across eight states." Lisa Pai testified that she would describe the Bank as a "Korean American *focused* bank," rather than a "Korean American Bank" (emphasis added).  July 13, 2017 Deposition of Lisa Pai at 14:4-9 (Moran Cert. Ex. G) ("All of the banks I have worked for are Korean American focused bank. Q. Is that the term you used in your job; if you were explaining to someone, you would say Korean American focused? A. Yes.").

This Paragraph is evidently of great importance to Plaintiff; it was the only one specifically raised by Plaintiff's counsel during the October 9 meet-and-confer. While unnecessary under the rules, the Bank offered to compromise on this response and admit that it is a "Korean American *focused*" bank, per Ms. Pai's deposition, if it meant avoiding this unnecessary motion. *See* October 9, 2020 Letter to plaintiff Counsel (Moran Cert. Ex. 6). Plaintiff's counsel stated that he would accept that compromise, but would continue to prosecute the Motion as to all other paragraphs of the Answer that he raised. *See* October 21, 2020 Letter from Plaintiff Counsel (Moran Cert. Ex. 7).

Yet, now Plaintiff appears to have reverted to his original position that the Bank *must* admit to being a "Korean American bank," as opposed to a "Korean American *focused*" bank. Plaintiff makes no effort to explain to the Court why it is material in any way to this suit whether the Bank is a "Korean American bank," as

21

opposed to a "Korean-American focused bank."  This is the triviality that Plaintiff seeks to elevate to sanctionable conduct, and is a good example of the vexatious and dilatory intent behind the instant motion.

**Paragraph No. 43**

Paragraph 43 of the Complaint asserts:

> In or around January 15, 2014, the Bank discovered that H.S. Hur was engaged in creating New Millennium Bank as a Korean American bank to compete with the Bank in northern New Jersey.

> Complaint ¶ 43 (ECF No. 1).

The Bank properly responded by admitting that "H.S. Hur was involved in creating New Millennium Bank[,]" and denying the remainder of Paragraph 43. Plaintiff cites no evidence that the Bank "discovered" that the bank H.S. Hur was starting would be a "Korean American bank." Likewise, Plaintiff cites no evidence that the Bank "discovered" that the new bank would "compete with the Bank in northern New Jersey." In fact, Plaintiff admits that a partial denial was appropriate, but contends that the Bank should have admitted slightly more than it did. Once again, Plaintiff cannot submit an improperly long and argumentative Complaint, and then demand that the Defendant parse through every line of the pleading to search out any sentence fragment that may be admitted. The Bank's answer admitting facts that were unquestionably true and denying facts which (even Plaintiff admits) were outside of the Bank's knowledge was reasonable under the circumstances.

## Paragraph No. 47

Paragraph 47 of the Complaint asserts:

> The following day, January 23, 2014, Chon attended another meeting with the same two Bank employees plus Alicia Lee, the Bank's first vice president and operations administrative manager, who had flown to New Jersey from Los Angeles overnight to interview Chon. Chon again confessed to embezzling money from BankAsiana.

> Complaint ¶ 47 (ECF No. 1).

With respect to this meeting, the Bank properly admitted "only that Chon met with Bank employees and confessed to embezzling money." In doing so, the Bank admitted the substance of Paragraph 47.

Plaintiff contends that the Bank was required to separately admit the date of the meeting (which is immaterial, and has never been disputed), *and* the fact that Alicia Lee flew to New Jersey from Los Angeles (which is also immaterial and has never been disputed). But that is *not* what the Rules require. Rule 8(b)(1)(B) states that "[a] denial must fairly respond to the *substance* of the allegation."

Paragraph 47 is emblematic of the unreasonableness, and legal emptiness, of Plaintiff's Rule 11 Motion. Plaintiff demands that a Defendant responding to an overbroad and argumentative Complaint admit to details that are not even at issue and have no bearing on the Plaintiff's claims.

## Paragraph No. 48

Paragraph 48 of the Complaint asserts:

23

At this meeting, in response to a suggestion from the Bank employees, Chon first claimed that Ryu was also involved in her embezzlement. Chon stated that Ryu initially contacted Chon and asked her for a personal loan to which Chon responded no. According to Chon, Ryu then asked Chon if there was any way that she could facilitate a $10,000 "loan" to him, which she understood to be a request to steal from the Bank. As a result, Chon stole $10,000 from the Bank in cash and delivered it to Ryu, Chon told the Bank. Chon also stated that after the initial $10,000, she provided cash to Ryu whenever he asked for it. She stated that sometimes she delivered the stolen cash to Ryu, and other times he came to the Fort Lee Branch to pick it up. Chon stated that Ryu contacted her by BankAsiana company phone, not home or cell phone, when he wanted her to give him cash. Chon also stated that money she embezzled went to her husband's business use, and she admitted to forging her husband's signature to issue checks from her husband's BankAsiana business account.

Complaint ¶ 48 (ECF No. 1).

Faced with this overlong and factually inaccurate paragraph, the Bank properly admitted "only that Chon implicated Ryu in the embezzlement from the Bank." The account offered by Paragraph 48 is not faithful to the evidence cited in Plaintiff's Rule 11 Motion. First, Chon's confession of Ryu's involvement was not made "in response to a suggestion from the Bank." This allegation apparently comes from a statement Chon made to the FBI, and then promptly recanted. This allegation modifies the entire paragraph, and is a good example of how Plaintiff attempts to entangle argument within alleged statements of fact so as to elicit a favorable admission.

Likewise, Plaintiff's account of the interactions between Chon and Ryu are incomplete and misleading. For example, during a meeting with the Bank's general counsel, Chon explained that Ryu discovered her initial embezzlement, Ryu confronted her and demanded a share of the embezzlement in the form of a "loan." *See* July 13, 2017 Deposition of Lisa Pai at 197:24-198:5 ("he knew and was holding that against her and -- which is why she couldn't say anything and had to follow his instructions."). There is no evidence in the record for the proposition that Chon stole money for Ryu simply because she misunderstood his request for a "loan" as a request to steal. Plaintiff also misstates the date on which certain confessions were first made. Although Plaintiff dismisses this fact as a "quibble," it clearly renders Plaintiff's allegation false—a person cannot say something for the "first" time on two separate dates.

As with the other 215 paragraphs of Plaintiff's prolix and argumentative Complaint, the Bank was simply not required to parse each and every line in search of admissible material. Rather, the Bank was only required to respond to the substance of the allegations with a level of detail *reasonable under the circumstances*.

**<u>Paragraph 50</u>**

Paragraph 50 was also listed in Plaintiff's previously filed Motion to Strike. That paragraph of the Complaint asserts:

> Less than a week later, on January 29, 2014, an article about New Millennium Bank, which mentioned Ryu's role as chief operating officer, appeared in an industry report. The following day, the Bank's chief financial officer circulated a copy of the report to the Bank's board of directors as well as the Bank employees who were participants in the investigation of the embezzlement. The cover email specifically called out Ryu's involvement in New Millennium Bank.

> Complaint ¶ 50 (ECF No. 1).

The Bank properly admitted "only that an article appeared on a website related to New Millennium Bank" and "[t]he contents of that article speak for themselves." Ryu assails the Bank's reference to documents referenced in the Complaint or otherwise known to the parties as inappropriate; however, in a "case-about-a-case" in which so much discovery already has occurred, it was the *most* appropriate response.  Here, the Bank produced the email and article in question to the Plaintiff during the course of the Embezzlement Action. *See* Ryu 43, January 30, 2014 Email Enclosing Article (Moran Cert. Ex. K).  The Bank was not required to accept Plaintiff's characterizations of such documents, and was entitled to respond that the documents say what is written in them.

## Paragraph 52

*Abandoned by Plaintiff.*

## Paragraph 59

Paragraph 59 of the Complaint asserts:

> Ryu was perplexed as to why the Bank had not reached out to him to discuss Chon's lies as part of their investigation, so he called Lisa Pai ("Pai"), who was executive vice president and chief legal and human resources officer of the Bank, on or about February 10, 2014. Ryu knew Pai through dealings in connection with the sale of BankAsiana to the Bank in 2013.

> Complaint ¶ 59 (ECF No. 1).

The Bank properly admitted "only that Ryu contacted Lisa Pai[,]" and denied knowledge of the remaining facts. Paragraph 59 concerns experiences and impressions peculiarly within Ryu's knowledge; the Bank has no way of ascertaining whether Ryu was "perplexed."

Paragraph 59 also contains argument, which the Bank rejects. For example, the Bank rejects the argument that Chon "lied" to the Bank about Ryu's involvement, and likewise rejects the argument that the Bank knew about certain unspecified lies in February 2014.

Plaintiff—grasping at straws—contends that the Bank should have admitted Lisa Pai's titles in its Answer. But Lisa Pai's titles are not, and have never been, in dispute; they do not go to the *substance* of the Complaint. This is an example of the *unreasonableness* of Plaintiff's position, which would require the Bank to comb through every single allegation—no matter how ancillary, unimportant, or obvious—to admit any sentence fragment of information which it does not dispute.

**Paragraph 60**

27

*Abandoned by Plaintiff*

## Paragraph 62

*Abandoned by Plaintiff*

## Paragraph 63

*Abandoned by Plaintiff*

## Paragraph 66

*Abandoned by Plaintiff*

## Paragraphs 68, 70, 72-73

Paragraphs 68, 70, and 72-73 of the Complaint all concern a February 13, 2014 meeting that took place between Plaintiff and the Bank's general counsel, accompanied by the Bank's outside counsel. In those paragraphs, Plaintiff purports to set forth a "he said/she said" account of what was discussed.

To the Bank's knowledge, no recording of this meeting was made and no notes were taken of the meeting. Yet, at points, Plaintiff's account takes on the appearance of a verbatim script of the conversation (which transpired more than six years ago). Plaintiff either has uncanny powers of recall, or he is taking the opportunity to *create* a more favorable record of that conversation.

In *Ferraraccio*, 2015 WL 518578 (W.D. Pa. Feb. 6, 2015) the Court considered a motion to strike portions of an answer that responded "denied as stated" to 15 paragraphs of the Complaint. In *Ferraraccio* (as here), the Complaint

purported to summarize the substance of unrecorded conversations between the parties. *Id.* at *2-3. The defendants argued that the response "denied as stated" was appropriate for those allegations, since some of the paragraphs mischaracterized exchanges, while others could not be remembered by the defendants. The Court agreed, and found that the defendants' denials complied with Rule 8 because they "effectively alert[ed] Plaintiff that the allegations in the relevant paragraphs are denied and that Plaintiff will be required to provide evidence as to those claims." *Id.* at *4.

Here, as in *Ferraraccio*, Plaintiff provides his own summary of an unrecorded conversation that occurred roughly six years ago. Like the Plaintiff in *Ferraraccio*, Ryu sometimes offers a near transcript-like account of what was said, and by whom. Plaintiff's counsel had several opportunities to depose the Bank's general counsel with respect to this meeting. However, the facts alleged in these paragraphs *do not appear* in Ms. Pai's account of that meeting. *See* August 18, 2017 Deposition of Lisa Pai at 434:17-447:18 (Moran Cert. Ex. H). The Bank was not required to accept Ryu's characterization of these six-year-old conversations, and properly refused to admit the contents of these paragraphs in its Answer.

Finally, the fact that the Bank's responses did not state the precise words "denied as stated" is immaterial. As the court noted in *Ferraraccio*, "the fact that Defendants responded 'denied,' rather than 'denied as stated,' to other allegations in

29

the complaint is of no consequence. For, the particular language or form of the specific denial is not important as long as it is clear which allegations are being negated and which are not. *Id.* (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1266 (3d ed.2004)).

## Paragraphs 74-76, 78-80

Paragraphs 74 through 82 of the Complaint are all contained under the subheading "**Chon's Meeting with Pai at Which She Failed to Cooperate**[.]" The paragraphs offer Plaintiff's interpretation of a meeting that took place between Chon and the Bank's general counsel. As their heading suggests, each paragraph is intended to show that Chon "failed to cooperate" with the Bank.

The Bank does not accept Plaintiff's characterization that Chon "failed to cooperate" with the Bank. Indeed, Chon confessed the embezzlement, outed her accomplice, explained her methods, and provided the necessary details to remediate the damage to the Bank. Chon then entered into a plea deal with federal prosecutors, and served a lengthy prison sentence.

Just as the bank does not admit the argumentative conclusions in Paragraphs 74-76 and 78-80, it also does not admit certain factual allegations in and inferences from these paragraphs. For example, Paragraph 74 creates the false impression that Chon left the meeting early in order to avoid questioning from the Bank's outside

counsel, and omits that the Bank's outside counsel was simply late for the meeting. *See* August 18, 2017 Deposition of Lisa Pai at 246:9-17 (Moran Cert. Ex. H).

Likewise, Paragraph 78 characterizes—and misstates—Lisa Pai's deposition testimony, in which she testified that some of the inconsistencies in Chon's account could be explained "because initially she [Chon] believed that James might be able to help her financially." July 13, 2017 Deposition of Lisa Pai at 200:3-16 (Moran Cert. Ex. G). This is also consistent with Chon's deposition testimony. *See* June 23, 2016 Deposition of Karen Chon at 89:3-13 (Moran Cert. Ex. L). It is also consistent with Ryu's own secret recording of a conversation with Chon, in which he said he would "think about" her request if Chon would clear his name. *See* "Ryu and Chon Meeting transcription" at JR000520 (Moran Cert. Ex. I) ("At the same time, what Karen should do is clearing me from here, how could I help if you do not?").

Plaintiff's Rule 11 notice argued that the Bank was required to admit each and every one of these paragraphs in their entirety. Plaintiff has apparently softened this argument for purposes of his Rule 11 Motion: he now only contends the Bank was required to go through each paragraph line-by-line, and admit any scrap of fact that is capable of admission, no matter how trivial or shaded by argument. Plaintiff's position is unreasonable and incorrect.

The Bank was not required to provide its own competing narrative of the February 14, 2014 meeting in its Answer. It properly admitted what could be admitted, and denied the other misleading and false allegations of the Complaint.

**Paragraph 81**

*Abandoned by Plaintiff*

**Paragraph 83**

Paragraph 83 of the Complaint asserts:

> Following Chon's admission of the embezzlement on January 22, 2019, the Bank began an internal investigation that was reported internally in two separate memoranda, one dated February 25, 2014, and the other dated March 28, 2014 (shortly after the Bank had already sued Ryu). Pai specifically tasked the investigation with trying to find a link between Ryu and the embezzlement.

> Complaint ¶ 83 (ECF No. 1).

Paragraph 83 misstates the testimony of Lisa Pai, and the Bank properly admitted "only that the Bank reported certain of its findings in two memoranda, dated February 25, 2014 and March 28, 2014."

First, Ms. Pai testified that the February 25, 2014 and March 28, 2014 narratives were limited to investigating bank records and transactions, and only represented one aspect of the Bank's investigation. *See* August 18, 2017 Deposition of Lisa Pai at 409:18-411:23 (Moran Cert. Ex. H) ("So his role was to work with Aleesha [sic] to basically do a forensic accounting of the deposit -- the bank account

transactions that Karen had manipulated and create or summarize the specific transactions, how -- to -- for us to understand how she was able to avoid detection and how the money flowed."). The two memoranda did not represent summaries or conclusions of the Bank's investigation, but only one aspect of the Bank's investigation. *See* July 13, 2017 Deposition of Lisa Pai at 95:23-96:5 ("He used the term 'in conclusion,' but this was an internal audit report that started the investigation. It's not a conclusion of the investigation. . . . So I think he means in conclusion of his memo.").

Second, those investigators were tasked with determining whether or not there were any "links" with particular accounts, and, if so, highlighting those "links." *See* August 18, 2017 Deposition of Lisa Pai at 409:18-411:23 ("So basically that's what I was referring to from account to account, what kinds of links do you -- can you find, and if so, highlight them. That was the request."). They were *not* tasked with incriminating Ryu, as alleged in Paragraph 83 of the Complaint.

**Paragraph 85**

Paragraph 85 of the Complaint asserts:

> These memoranda also reported that in 2006, Chon had worked for a predecessor of the Bank in New York City. They reported that "Karen left the Bank through maternity leave under a cloud of suspicion since she and/or her employees had several cash shortages, of which $10,000 was the largest." They also reported that bank employees in 2006 "searched her purse and found $4,000 in cash,"

but "[s]he was not terminated and arrested for the cash shortage due to lack of sufficient evidence."

Complaint ¶ 85 (ECF No. 1).

The Bank properly admitted only that "the quoted text appears in the Bank's February 25, 2014 and March 28, 2014 memoranda."

## Paragraph 95

Paragraph 95 of the Complaint asserts:

Chon's husband had seven different bank accounts with BankAsiana during the years of Chon's embezzlement (2010-2013). The records for these accounts were available to the Bank at all times. They show that during these years approximately $2.3 million passed through these accounts. The Bank's auditors reported to the Bank that Chon controlled these accounts. Quite obviously, Chon could have laundered the embezzled $1.5 million through these accounts she controlled. The Bank did nothing to investigate this possibility, which suggests deliberate indifference to the true facts.

Complaint ¶ 95 (ECF No. 1).

The Bank properly admitted "only that Chon's husband had bank accounts with BankAsiana."

First, beginning with the words 'Quite obviously' and continuing through the end of this paragraph, Ryu makes argumentative, speculative, and incorrect averments, which the Bank rejects.

Second, the assertions in Paragraph 95 are not strictly faithful to the evidence in the record. Contrary to Paragraph 95 and Plaintiff's Rule 11 Motion, the

34

memoranda prepared by Bank auditors—and to which Paragraph 95 refers—state that "we believe that Karen controlled all the above accounts even though she was not a signer on any of them. We believe 239 financial transactions totaling $452,569.94 were forged by Karen and another 241 financial transactions totaling $255,113.77 were either signed by her husband (Tae) who is not an authorized signer on the account or were signed by Karen who forged her husband's signature." *See* March 28, 2014 Investigation Narrative (Plaintiff's Exhibit I at WB813) (ECF No. 71). Given the deviation between Plaintiff's allegation and the documents to which it refers, the Bank appropriately limited its admission to paragraph 95.

**Paragraph 96**

*Abandoned by Plaintiff*

**Paragraph 101**

*Abandoned by Plaintiff*

**Paragraph 149**

Paragraph 149 of the Complaint asserts:

> Hope Bancorp tried to avoid paying Ryu's fees and expenses by seeking a stay of the September 27 Order, but the district court denied the motion for a stay pending appeal in large part, on January 22, 2019, and on January 30, 2019, the court of appeals denied Hope Bancorp's motion for a stay pending appeal.

> Complaint ¶ 149 (ECF No. 1).

The Bank properly admitted "only that Hope Bancorp contested litigation brought by Ryu to recover legal fees."

Paragraph 149 ascribes motivations to Hope Bancorp's action in seeking relief before the U.S. District Court for the Southern District of New York. It suggests that Hope Bancorp was evasive or derelict in complying with its legal obligations (when, in fact, Hope Bancorp was properly exercising its legal rights in contesting Plaintiff's action for legal fees). The Bank was not required to accept Plaintiff's characterization of those legal actions.

Furthermore, Plaintiff characterizes the actual content of the court's orders, by stating that Judge Rakoff's January 22, 2019 order denied Hope Bancorp's motion for a stay "in large part." Again, the Bank was not required to accept this characterization of Judge Rakoff's order.

The Bank properly admitted the procedural portion of Paragraph 149, and properly denied Plaintiff's attempts to characterize and shade that procedural history.

### Paragraph 162

*Abandoned by Plaintiff*

## CONCLUSION

Plaintiff's baseless Rule 11 Motion and companion Motion to Strike, brought on the heels of Judge Clark's September 1, 2020 stay order, bespeak an attempted

end-run around that order. Just to avoid the possibility of sanctions, the Bank was compelled to proffer evidentiary and legal bases for 77 of its straightforward responses in the Answer, which is called for nowhere in the Federal Rules.  Having met Plaintiff's arguments, it is now clear to the Bank that Plaintiff has not only tried, but has succeeded, in compelling a Rule 56-type response to a Rule 8 pleading, and has improperly circumvented the Court's stay order by compelling factual bases for the Bank's pleading. We submit that this was improper.

For all of the foregoing reasons, Plaintiff's Rule 11 Motion should be denied in its entirety. While the Bank has determined not to burden the Court with competing sanctions motions, it does ask the Court to consider the substantial burden and cost imposed on it in responding to Plaintiff's litigation tactics.

By:    /s/ ERIC W. MORAN
Eric W. Moran, Esquire
Theodora McCormick, Esquire
**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500 (phone)
(212) 878-8600 (fax)

*Attorneys for Defendant*
*Bank of Hope*

Date: December 11, 2020