## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SUK JOON RYU, a/k/a JAMES S. RYU,

    **Plaintiff,**

    **v.**

BANK OF HOPE,

    **Defendant.**

Civ. No. 19-18998 (KM) (JBC)

**OPINION**

KEVIN MCNULTY, U.S.D.J.:

In a previous case, Bank of Hope alleged that former employee Suk Joon "James" Ryu embezzled from the Bank. That case was voluntarily dismissed. Now in this case, Ryu alleges that the embezzlement action was a malicious use of process, among other things. The Bank moves for summary judgment on that claim, Count 1 of the Complaint. (DE 33.)[1] For the following reasons, the Bank's motion is **GRANTED**.

---

[1]    Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

    Bank Brf. = Brief in Support of the Bank's Motion for Partial Summary Judgment (DE 34)

    Ryu Opp. = Brief in Opposition to the Bank's Motion for Partial Summary Judgment (DE 57)

    Ryu Dep. = June 14, 2018 Deposition of James Ryu (DE 35-20)

    FBI Rep. = Federal Bureau of Investigation February 20, 2014 Report (DE 35-4)

    Pai Dep. = July 13, 2017 Deposition of Lisa Pai (DE 35-13)

    Hamersky Rep. = February 25, 2014 Investigation Narrative prepared by Orest Hamersky (DE 35-7)

    Hamersky Dep. = February 15, 2018 Deposition of Orest Hamersky (DE 35-19)

    Lee Dep. = October 13, 2016 Deposition of Bo Young Lee (DE 35-12)

## I.   BACKGROUND

### A. Facts

#### 1. The Embezzlement Scheme

Ryu was the Senior Vice President, Chief Compliance Officer, and Chief Operating Officer of BankAsiana, Bank of Hope's predecessor. (Ryu Dep. at 70:9–17.) Ryu supervised Miye "Karen" Chon, an Assistant Vice President and Operations Officer in BankAsiana's Fort Lee branch. (FBI Rep. at 5.) In October 2013, Wilshire Bank acquired BankAsiana, and Chon and Ryu were terminated as part of the merger. (Ryu Dep. at 24:12–25:6.)

Shortly after the merger, in January 2014, Wilshire Bank found that Chon was associated with irregular transactions. (Lee Dep. at 14:24–15:3; Hamersky Rep. at 4.) When Wilshire Bank's investigators contacted Chon about the transactions, she confessed that she had been embezzling money from BankAsiana for years. (Hamersky Rep. at 4.) She also stated that someone else at BankAsiana was involved, but she would not name that person. (Lee Dep. at 19:9–12.) The next day, investigators met with Chon again, she confessed again, and this time alleged that Ryu, too, was involved in the embezzlement. (Hamersky Rep. at 5.)

Wilshire Bank's investigation revealed further facts which they regarded as relevant to Ryu and his alleged involvement:

- Chon explained that Ryu had discovered her embezzling and told her that he would turn her in if she did not follow his instructions and give him a portion. (Pai Dep. at 197:24–98:5.)
- Investigators concluded that Chon could not have carried out such a large, lengthy embezzlement scheme (which exceeded $1 million) without help. (*Id.* at 33:17–34:8.)
- During the embezzlement period, Ryu faced financial difficulties and had substantial debt. (Hamersky Dep. at 50:6–53:7; Pai Dep. at 129:15–30:7.)
- Ryu should have noticed Chon's irregular transactions and was responsible for reporting suspicious activity at BankAsiana to the United

States Department of the Treasury but did not do so. (*See* Ryu Dep. at 231:22–32:18, 248:11–14; Hamersky Dep. at 52:24–53:7.)

- Ryu failed to fill positions that would have had direct supervisory authority over Chon, and that supervisory vacuum allowed Chon to regularly make embezzling transactions. (Pai Dep. at 133:14–36:15.)

- During the investigation, Ryu met with Chon multiple times. (*Id.* at 183:16–84:25.)

### 2. The Embezzlement Action

After gathering these facts, in March 2014, Wilshire Bank sued Ryu (plus Chon and others) in this Court to recover for the alleged embezzlement. (DE 35-8 ¶ 1.) Discovery entailed more depositions of the parties and filled out further details. (DE 34-1 ¶¶ 76–99.) Ryu moved for summary judgment on the embezzlement-related claims against him, but Judge Linares denied summary judgment, finding that Chon's multiple depositions over the years had some inconsistencies, so there were genuine issues of material fact. *Bank of Hope v. Chon*, Civ. No. 14-1770, 2019 WL 1123659, at *3–4 (D.N.J. Mar. 12, 2019).

A few days after Judge Linares denied summary judgment, the Bank[2] moved for the Court's permission to voluntarily dismiss its complaint with prejudice. (DE 35-24 at 1.) The Bank explained that Ryu had commenced a separate lawsuit in the United States District Court for the Southern District of New York (Judge Jed S. Rakoff presiding) against the Bank's parent company. That lawsuit sought advancement of attorney fees incurred due to the embezzlement action and a related government investigation, pursuant to an indemnification clause in the merger agreement between Wilshire Bank and BankAsiana. (*Id.* at 3.) Judge Rakoff had ordered an advancement of fees in 2018; since then, the Bank had advanced more than $1.3 million dollars to Ryu's attorney and would need to make further advances monthly. (*Id.* at 5–6.) As a result, the Bank sought dismissal of the embezzlement action, stating that

---

[2]     After a series of mergers and acquisitions, the Bank of Hope succeeded Wilshire Bank. (Compl. ¶ 27.)

it did so only "to further mitigate its litigation costs." (*Id.* at 6.) The Bank stated that its dismissal request did not reflect "a changed view on the merits." (*Id.* at 7.) Judge Linares granted the request for dismissal, with prejudice. (DE 35-25.)

### B. Procedural History

In this separate action, Ryu sued the Bank, asserting claims under New Jersey law for malicious use of process (Count 1) and breach of contract (Count 2) arising from the embezzlement action. (Compl. ¶¶ 1–23.)[3] The Bank moved to dismiss Count 1 and submitted multiple exhibits in support. (DE 12.) Ryu opposed consideration of those exhibits; in response, I notified the parties that I would treat the motion as one for summary judgment and accept supplemental papers. (DE 22.) Ryu moved for clarification of my order; I reconsidered my order and adopted the more straightforward procedure of denying the motion to dismiss and authorizing the Bank to file a targeted motion for summary judgment on Count 1. (DE 24.) The Bank did so, and its motion for summary judgment on Count 1 is now before the Court. (DE 33.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to

---

[3]    The parties are diverse because the Bank is incorporated in and has its principal place of business in California, while Ryu is a New Jersey citizen. (Compl. ¶¶ 24–25.) Ryu seeks more than $75,000 in damages. (*Id.* ¶ 28.)

the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

## III.   DISCUSSION

The issue before the Court is whether the Bank is entitled to summary judgment on Ryu's tort claim of malicious use of process. Malicious use of process is part of a family of torts relating to the wrongful initiation or maintenance of legal proceedings against another. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). Because of their potential to chill the people's resort to the courts, these torts "are treated with great caution." *Id.*

Malicious use of process specifically addresses the wrongful commencement of a civil case against another. *Id.* Such a claim has five elements: that (1) a civil action instituted by this defendant against this plaintiff, (2) motivated by malice, (3) with an absence of reasonable cause, (4) terminated favorably to the plaintiff, and (5) caused a special grievance to the plaintiff. *Id.* at 1022–23. The Bank argues that the third, fourth, and fifth elements are not satisfied here. (Bank Brf. at 2.)

The *sine qua non* of this claim is element 3, the absence of reasonable cause to institute the embezzlement action. I hold that the Bank is entitled to summary judgment in its favor on Count 1, because there is no genuine issue of material fact on that reasonable cause element.

5

**A. Reasonable Cause, Favorable Termination, Special Grievance: Ripeness for Decision on Summary Judgment**

Because this summary judgment motion comes relatively early in the case (albeit after significant litigation elsewhere), the Court must consider the procedural fairness of considering or granting it at this time. I conclude, in short, that element 3, lack of reasonable cause, is now ripe for decision on summary judgment. Elements 4 and 5, however, are not.

This matter originally came before the Court on the Bank's motion to dismiss Count 1 (malicious use of process) (DE 11), pursuant to Federal Rule of Civil Procedure 12(b)(6). Ryu argued that the motion to dismiss improperly relied on materials extrinsic to the Complaint. Most of those documents, Ryu conceded, were actually referenced in his own Complaint. Thus, their authenticity, as such, was uncontested. He complained, however, that the Bank selectively quoted from them or used them for purposes exceeding the proper bounds of a motion to dismiss. The former issue posed no barrier; if the documents were quoted misleadingly, Ryu could correct that in his response. I was more concerned with Ryu's point that excessive reliance on the contents of extrinsic documents, even if referenced in the Complaint, could divert the Court from the Rule 12(b)(6) task of assessing the sufficiency of the Complaint's allegations.

I therefore entered an order deeming the motion to be one for summary judgment, pursuant to Rule 12(d), and granting Ryu an opportunity to present additional materials pertinent to the motion. Ryu then filed a motion for clarification.

I granted reconsideration. To ensure an orderly procedure, I revised my approach. I vacated my Rule 12(d) order and authorized the Bank to file a separate motion for summary judgment under Rule 56. Any such motion, I wrote, should focus on the element or elements of the tort that may be resolved without the need for resolution of questions of a party's mental state or other issues of fact that might require further discovery or trial. My order specifically

directed Ryu to address, under Rule 56(d), the need for more discovery before issues raised by the Bank could be decided:

> As in any summary judgment motion, the plaintiff may argue that, in the current posture, necessary facts are not yet available to him. *See* Fed. R. Civ. P. 56(d). As to that issue, the court will not accept generalities. The plaintiff will be required to give specifics as to what more is required concerning particular elements of the tort. Some elements are more fact-bound than others, and there have already been two related federal-court litigations between these parties.

(DE 24 at 3–4.)

The Bank then filed the current summary judgment motion, in which it asserts that Ryu has failed to raise a genuine issue of fact as to elements 3, 4, and 5 of malicious use of process. As part of his opposition, Ryu did file a Rule 56(d) statement. (DE 51.) I therefore consider, not only whether the summary judgment standard is met, but whether the motion is premature: *i.e.*, whether in fairness, Ryu, the nonmovant, should be afforded an additional opportunity to obtain in discovery "facts essential to justify its opposition." *See* Fed. R. Civ. P. 56(d). I find that element 3, lack of reasonable cause, is now ripe for decision on summary judgment. I agree with Ryu, however, that further discovery would likely be required to poise elements 4 and 5 (favorable termination and special grievance) for decision.

As for element 3, lack of reasonable cause, my order cited some peculiar features of the tort of malicious use of process. Documents could be relevant to certain elements of that tort, I wrote, irrespective of the truth of their contents. Assuming that, as here, their authenticity is undisputed, such documents may be sufficient to establish, for example, that the Bank had certain information in its possession when it filed the embezzlement action. If such information surmounts the relatively low substantive threshold of reasonable cause, then the summary judgment record on that element may be sufficient.

As to element 4 (favorable termination), the picture is cloudier. The sparse case law suggests that voluntary withdrawal of an action may constitute

7

a favorable termination, but that it will depend on the surrounding circumstances. *See Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 257 (N.J. Super. Ct. Ch. Div. 1951), *aff'd*, 89 A.2d 242 (Mem.) (N.J. 1952) (per curiam); [4] Restatement (Second) of Torts § 674 cmt. j (Am. Law Inst. 1977); *Seibel v. Mittlesteadt*, 161 P.3d 527, 531 (Cal. 1986) (applying the Restatement and defining "favorable" to mean that the dismissal "reflect[s] the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit" (citation omitted)). That substantive standard might require the Court to determine whether the Bank's stated reasons for withdrawing the action were its true reasons.[5]

As to element 5, a "special grievance" means something more than "the mere cost of defending against litigation." *LoBiondo*, 970 A.2d at 1026. Rather, there must be some "interference with one's liberty or property." *Id.* (citation omitted). "[T]he loss of one's ability to practice his or her profession, with a resultant loss of income" qualifies. *Turner v. Wong*, 832 A.2d 340, 350 (N.J. Super. Ct. App. Div. 2003). Likewise, "[w]here the malicious lawsuit actually

---

[4]     Although *Mayflower* is a trial court opinion, the New Jersey Supreme Court affirmed for the reasons given by the trial court, 89 A.2d 242 (Mem.), so I will consider *Mayflower. See Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004) (New Jersey trial court decisions not entitled to any "deference" but are considered "to the extent that the quality of its analysis convinces us that the New Jersey Supreme Court would decide the issue similarly").

[5]     The Bank notes that a minority of states hold that a voluntary dismissal is categorically not a favorable termination; so under this approach, I would not need to probe the Bank's reasons for dismissal. (Bank Brf. at 32 n.7 (collecting cases from Colorado, Ohio, Texas, and Tennessee).) Federal courts, however, usually presume that a state court will follow the majority view on an undecided issue. *E.g.*, *Bobo v. Tenn. Valley Auth.*, 855 F.3d 1294, 1304 (11th Cir. 2017); *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 433 (5th Cir. 2014); *see Small v. United States*, 333 F.2d 702, 704 (3d Cir. 1964). Indeed, in *Paul v. National Education Association*, a New Jersey court, affirmed by the Appellate Division, followed the Restatement view on reasonable cause, instead of the minority view. 459 A.2d 1213, 1216 (N.J. Super. Ct. L. Div. 1983), *aff'd*, 480 A.2d 213 (N.J. Super. Ct. App. Div. 1984). While applying the minority approach would mean that I could more easily decide element 4 on summary judgment, it is not likely that New Jersey would follow that approach.

puts the targeted defendant out of business for a period of time, this constitutes a 'special grievance.'" *Giri v. Rutgers Cas. Ins. Co.*, 641 A.2d 1112, 1116–17 (N.J. Super. Ct. App. Div. 1994). Whatever the harm, though, the malicious lawsuit must be the direct cause. *Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart P.C.*, 11 F.3d 385, 390 (3d Cir. 1993). This element, then, might require resolution of factual issues as to, *e.g.*, the effect of the embezzlement action on Ryu's career.

As to the fourth and fifth elements, then, more discovery might be required before their resolution, whether on summary judgment or at trial, would be procedurally appropriate.

**B. Reasonable Cause: Analysis**

Turning to the element that can be decided now, a malicious use of process claim requires that the Bank instituted the embezzlement action without reasonable cause.[6] *LoBiondo*, 970 A.2d at 1022. To determine whether there was reasonable cause, I ask, from the viewpoint of "the reasonable prudent person," whether the Bank had "a reasonable belief that there was a good or sound chance of establishing the claim to the satisfaction of the court or the jury." *Id.* at 1024. "[T]he instigator of a law suit may rely on facts reasonably believed to be true and concerning which it might reasonably be expected that subsequent pretrial discovery would be supportive." *Westhoff v. Kerr S.S. Co.*, 530 A.2d 352, 355 (N.J. Super. Ct. App. Div. 1987). A finding of reasonable cause will be denied when a case is knowingly brought "based on false allegations or false testimony." *Paul v. Nat'l Educ. Ass'n*, 459 A.2d 1213,

---

[6]    Courts have used the term "probable cause" to describe this element, but the concept is distinct from that of probable cause in criminal law. *See LoBiondo*, 970 A.2d at 1022. In the civil tort context, courts have sometimes maintained the distinction by using the term "reasonable cause" instead, and I will do so as well. *E.g.*, *Fidelity Eatontown, LLC v. Excellency Enter., LLC*, Civ. No. 16-3899, 2017 WL 2691417, at *8 (D.N.J. June 22, 2017).

1216 (N.J. Super. Ct. L. Div. 1983), *aff'd,* 480 A.2d 213 (N.J. Super. Ct. App. Div. 1984).[7]

That narrow issue—unlike others, *see supra*—is ripe for decision on summary judgment. It does not require resolution of factual issues as to whether Ryu actually participated in any embezzlement. On the contrary, it depends only on the quantum of evidence that the Bank had in its possession when it initiated the embezzlement action. As to that issue, there is no genuine issue of fact; it requires only that the Court apply the reasonable cause standard to the evidence the Bank had at the time.

At the time the Bank commenced the embezzlement action, it had facts in its possession sufficient to support a reasonable belief that a civil action based on the alleged embezzlement would be successful.[8] I start with the elements of embezzlement, a form of conversion in which money comes

---

[7]     State trial court opinions do not bind other state courts, and therefore do not bind federal courts predicting state law in a diversity case. *See King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160–62 (1948). However, the trial court in *Paul* was affirmed summarily by the Appellate Division "substantially for the reasons expressed" by the trial court. 480 A.2d at 215. Because I give "due regard" to decisions of the Appellate Division, *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 525 n.8 (3d Cir. 2019) (citation omitted), I will consider the trial court opinion in *Paul,* as incorporated and endorsed by the Appellate Division, when applying New Jersey law.

[8]     I will focus on the facts in the Bank's possession at the time it filed the embezzlement action because the focus of a malicious use of process claim is whether the defendant had reasonable cause to *bring* the suit. *See LoBiondo*, 970 A.2d at 1024. True, a malicious use of process claim has been recognized when a complainant maintains a suit after it becomes clear that there is no reasonable cause. *See* Restatement (Second) of Torts § 674 cmt. c. Indeed, Ryu argues that the depositions taken in the embezzlement action were inconsistent, so the Bank should have dropped the case. (Ryu Opp. at 24–25.) But that argument and a claim for malicious continuation of process is foreclosed for the reasons in Judge Linares' summary judgment opinion. There, Judge Linares persuasively explained why Ryu was not entitled to judgment as a matter of law on the Bank's embezzlement action and how the testimony of various witnesses could support the Bank's position. *Bank of Hope*, 2019 WL 1123659, at *3–4. Given those reasons, I cannot say that reasonable cause was so lacking that the Bank should have dropped the suit despite a federal judge's ruling that the issues could go to trial.

unlawfully into the hands of person as a result of that person's breach of a trust relationship. *State v. Hubbs*, 175 A.2d 443, 447 (N.J. Super. Ct. App. Div. 1961); *see Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013). "[C]onversion is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel." *Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 661 (N.J. 2020) (citation omitted). Chattel subject to a conversion claim may include identified sums of money. *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (citations omitted).

Multiple facts about Ryu's involvement with Chon supported a conversion claim. First and foremost, Chon implicated Ryu in the embezzlement scheme. (Hamersky Rep. at 4–5; Pai Dep. at 197:24–98:5.) Specifically, an investigators' report from January 2014 recorded that "[Chon] alleged that sometimes she delivered the stolen cash to [Ryu] and at other times he came to the East Fort Lee Branch to pick up the cash." (Hamersky Rep. at 5; *see also* DE 35-3 at 3.) That statement speaks directly to a conversion claim; Chon alleged firsthand knowledge that money unlawfully came into Ryu's hands.

Other facts revealed by the investigation were consistent with Ryu's facilitation of Chon's embezzlement. Given his position at the Bank, he had the means to discover and conceal such a scheme. (*See* Ryu Dep. at 231:22–32:18, 248:11–14.) What is more, he failed to report any irregular transactions or to fill positions that could have supervised Chon. (Hamersky Dep. at 52:24–53; Pai Dep. at 133:14–36:15.) Finally, he had a motive to embezzle because he was in financial difficulty. (Hamersky Dep. at 50:6–53:7; Pai Dep. at 129:15–30:7.) These facts, in combination with Chon's interviews, meet the relatively low standard of a reasonable belief that the Bank had a sound chance of proving conversion by a preponderance of the evidence or, at least, that discovery would reveal further facts to support the claim.

In response, Ryu argues that I must assess reasonable cause based on the totality of the circumstances, including the existence of exculpatory evidence that should have negated any belief by the Bank that it could prevail. (Ryu Opp. at 3.) As Ryu sees it, the Bank lacked reasonable cause because its only "direct evidence" was Chon's implicating statement, but Chon, as a confessed embezzler, was not credible. (*Id.* at 7–9.) Without further investigation or corroborating evidence, Ryu reasons, it was tortious to commence a civil lawsuit. (*Id.*)

Ryu overstates the significance of these facts under the fairly forgiving reasonable cause standard. To be sure, Chon declined to identify her accomplice at the first interview, but she identified the accomplice as Ryu at the second. That delay, as well as Chon's status as an embezzler, might provide fodder for cross-examination. But it falls far short of knowledge on the Bank's part that Chon was lying. *Cf. Paul*, 459 A.2d at 1216 (citing examples from the case law of evidence known by the plaintiff to be fabricated for purposes of the lawsuit, and an accusation of arson brought by the actual arsonist).[9]

Ryu also missteps legally by relying exclusively on malicious prosecution cases and the criminal-law-based standard for probable cause. New Jersey courts have explained that "[o]bviously less in the way of grounds for belief will be required to justify a reasonable [person] in bringing a civil rather than a criminal suit." *Westhoff*, 530 A.2d at 355 (quoting *Prosser and Keeton, The Law of Torts* § 120 at 843 (5th ed. 1984)). So the cited malicious prosecution case law is not directly relevant.[10]

---

[9]   Chon later wavered or became evasive in depositions, which perhaps further devalued her testimony, but that occurred well after the Bank had initiated the embezzlement action.

[10]   Even the more rigorous criminal-law standard of probable cause "does not require a complainant to evaluate the totality of circumstances both inculpatory and exculpatory, as a trier of fact guided by a reasonable doubt standard." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (alteration and citation omitted) (applying New Jersey law).

As explained above, the Bank possessed reasonable grounds for its belief. While Ryu questions Chon's credibility and the thoroughness of the investigation, the bottom line is that Chon implicated Ryu and that other facts were consistent with Ryu's involvement. The Bank and its representatives were not present for the alleged interactions between Chon and Ryu; even if Chon's representations were false, the Bank had no firsthand basis to know that. It did gather evidence tending to corroborate Chon. It was not unreasonable for the Bank to add Ryu as a defendant in the embezzlement action so that its allegations could be tested in court.

The Bank has therefore carried its burden on element 3 of malicious use of process; the plaintiff has failed to raise a genuine issue of fact as to the Bank's lack of reasonable cause. Because all the elements are required, that deficiency requires summary judgment in the Bank's favor on Count 1.

## IV.   CONCLUSION

For the reasons set forth above, the motion for summary judgment on Count 1 is granted.

A separate order will issue.

Dated: January 6, 2021

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**

13